### 46814.   BLACKMON v. CAMPBELL SALES COMPANY et al.

ARGUED JANUARY 6, 1972—DECIDED MARCH 15, 1972—
REHEARING DENIED MARCH 31, 1972—

*Arthur K. Bolton Attorney General, Harold N. Hill Jr., Executive Assistant Attorney General, Richard L. Chambers, Lauren O. Buckland, Assistant Attorneys General, for appellant.*

*Alston, Miller & Gaines, Francis Shackelford, B. Harvey Hill, Jr., William L. Goodwin, for appellees.*

JORDAN, Presiding Judge. 1. While *Code Ann.* § 92-3113 at present includes changes subsequent to the periods here involved, § 92-3113 (6), originally enacted in 1941 as § 92-3113 (5), Ga. L. 1941, pp. 210, 218, is unchanged, and other changes in the section are immaterial to a decision in the present appeal.

Where the business income of a corporation is derived from property owned or business done within and without the State, the stated purpose of § 92-3113 is to provide rules whereby "the tax shall be imposed only on that portion of the business income which is reasonably attributable to the property owned and business done within the State." *Code* § 92-3113 (6), Ga. L. 1950, pp. 299, 300, reads as follows: "The net income of a domestic or foreign corporation which is a subsidiary of another corporation or closely affiliated therewith by stock ownership shall be determined by eliminating all payments to the parent corporation or affiliated corporation in excess of fair value, and by including fair compensation to such domestic business corporation for its commodities sold to or services performed for the parent corporation or affiliated corporation. For the purposes of determining such net income the Commissioner may equitably determine such net income by reasonable rules of apportionment of the combined income of the subsidiary, its parent and affiliates or any thereof."

In our opinion the first sentence, in failing to state "who" shall make adjustments, imposes a mandatory obligation on a taxpayer within the specified categories, as well as the Commissioner, to determine net income by eliminating all payments "in excess of fair value" to the parent or affiliate, whatever the reason, and "by including fair compensation

. . . for its commodities sold to or services performed." The obvious purpose of the rule as a whole as stated in the first sentence is to pierce the veil of a corporate entity to reflect income as if all transactions with a parent corporation or an affiliate were at "arm's length." Application of the rule requires elimination of payments to the parent or affiliate in excess of fair value, and requires inclusion of the equivalent of payments from the parent or affiliate as fair compensation.

Unlike the first sentence of § 92-3113 (6), which states a mandatory rule, the second sentence states a discretionary rule. The Commissioner alone may pierce corporate veils and apply a unitary theory to determine equitably net income by reasonable rules of apportionment. In our opinion the two sentences must be read together, the second as limited by the first, which as a mandatory rule has priority. Thus, in order to exercise the discretion under the second rule the Commissioner must find that the income of the taxpayer cannot be adjusted in the manner first prescribed. To hold otherwise would reflect a determination that the second sentence gives him an unbridled discretion to resort to the unitary theory even though the taxpayer has done everything the law requires, or even though the Commissioner could adjust the return to reflect what the law requires.

On trial in the lower court the claimants properly assumed the burden of establishing that the returns were in keeping with requirements of the first accounting rule, and the trial judge was authorized to determine from the stipulations, as he did, "that there were no such payments in excess of fair value," and "that each such subsidiary receive fair compensation in its transactions with Campbell Soup." These findings are binding on appeal, and inasmuch as the findings reflect that the taxpayer had done all the law requires, no basis existed for the Commissioner to rely upon the second sentence of § 92-3113 (6) as authority to apply the unitary theory.

2. The contention of the Commissioner that to construe

§ 92-3113 (6) in the above manner renders § 92-3209 meaningless and surplusage because under this construction both address themselves to the same problem is without merit. The obvious purpose of § 92-3113 as a whole, of which § 92-3113 (6) is but a part, is to provide some of the rules (but not all, e.g., see §§ 92-3114, 92-3115, 92-3116) to determine corporate net income within the State. The obvious purpose of § 92-3209 is much broader, in that it enables the Commissioner (a) to adjust the distortion of income by any taxpayer in a group of taxpayers conducting business under substantially common control, to reflect "fair profit," and (b) to adjust corporate manipulations which distort income, to reflect "reasonable profits." The discretionary authority under § 92-3209 may be applied to taxpayers operating wholly within this State, or within and without the State, who are shifting income, but it contains no authority for combining the income of related corporations.

3. The second asserted error specifically attacks the findings of fact by the trial judge that there was no shifting of income between related corporations, as defined in § 92-3209, because the undisputed facts show transfer of goods and services for fixed percentages and the nonpayment for services by the controlling corporation. As restated in the brief the assertion is made that the trial judge erred in not finding that the income of the plaintiff corporations was improperly reported when the undisputed evidence showed fixed percentage allocations of income within a unitary business.

While the undisputed facts do show the transfer of goods and services for fixed percentages, and also that the parent performed some services for the subsidiaries without making specific charges, these facts do not necessarily reveal a distortion of true net income "whether by the arbitrary shifting of income, through price-fixing, charges for service, or otherwise" so that a "fair profit" is not shown, as contemplated under § 92-3209 (a), or manipulations "to create a loss or improper net income" so that "reasonable profits" are not shown, as contemplated under § 92-3209 (b). The

stipulations clearly show among other things that the charging of fixed percentages is an acceptable way of doing business, e. g., the stipulations disclose that independent brokers soliciting orders similar to those obtained by Campbell Sales would charge a commission of 2% to 4% of net billings, depending on the volume of sales, as compared to commissions for Campbell Sales under a contract formula varying from 1.980% to 2.752%, and that an independent broker performed the same services in Hawaii for a commission of 2% of net billings. This clearly authorizes the finding of the trial judge that "[t]he commission paid to Campbell Sales was at least equal to that which would have been paid to an independent broker and accordingly, Campbell Sales obtained a fair profit for its services to Campbell Soup." A further example is the finding in respect to loans by Campbell Soup to Joseph Campbell, for which Campbell Soup charged interest "at the lowest possible rates at which banks would have made loans." It would serve no useful purpose to detail all of these transactions, but a comparison of the stipulations and the findings of fact by the trial judge clearly discloses that his findings were authorized, from which he concluded "that there was no such arbitrary shifting of income, that goods were purchased from and sold to Campbell Soup at fair prices, that services performed were fairly compensated by Campbell Soup and each of the subsidiary corporations should have obtained a reasonable profit on its transaction with Campbell Soup."

4. Finally, the Commissioner asserts that the record shows that the taxpayer did not introduce evidence to show that the method of apportionment was not equitable and reasonable. This is elaborated upon in the brief by argument that when the Commissioner established that the taxpayers were engaged in a unitary business, citing Butler Bros. v. McColgan, 315 U. S. 501 (62 SC 701, 86 LE 991); Edison California Stores v. McColgan, 30 Cal. 2d 472 (183 P2d 16); and *Phillips v. Sinclair Refining Co.*, 76 Ga. App. 34 (44 SE2d 671), then the taxpayers had the burden of

showing that the formula method of the combined unitary business was unreasonable and resulted in the taxation of extraterritorial values, citing the Butler Bros. case and *Sinclair Refining,* supra, as well as Zale-Salem, Inc. v. State Tax Commission, 237 Ore. 261 (391 P2d 601).

The method of apportionment used by the Commissioner may or may not be equitable and reasonable, and we have no quarrel whatsoever with any of the precedents relied upon, but the premise on which the entire argument is based, i.e., the mere existence of a unitary business, is not the test for exercising the discretion vested in the Commissioner under the second sentence of § 92-3113 (6) for the reasons heretofore stated.

5. No error of law appears for any reason argued and insisted upon.

*Judgment affirmed. Deen and Clark, JJ., concur.*