POLAROID CORPORATION & others[1] *vs.* COMMISSIONER OF
REVENUE.

Suffolk. October 4, 1984. — December 11, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, O'CONNOR, JJ.

*Commissioner of Revenue. Regulation. Administrative Law*, Regulations,
Agency's interpretation of statute. *Taxation*, Corporate excise, Related
corporations. *Statute*, Construction. *Due Process of Law*, Taxation. *Con-
stitutional Law*, Taxation.

The Commissioner of Revenue, purporting to act under G. L. c. 63, § 39A,
could not lawfully redetermine the Massachusetts net taxable income of
a corporation and its numerous subsidiaries for the years 1979 and 1980
on the basis of the "unitary business" approach, without first adopting
appropriate regulations under the State Administrative Procedure Act.
[494-496]
The Commissioner of Revenue lacked statutory authority to employ the
"unitary business" approach in determining the Massachusetts taxable
net income of a corporation which dealt at arm's length with its affiliated
corporations. [496-501]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on September 19, 1983.

The case was reported by *Liacos*, J.

*John S. Brown (George P. Mair* with him) for the taxpayers.

*Stephen S. Ostrach*, Assistant Attorney General, for the
Commissioner of Revenue.

*Julia K. Johnson*, for John W. Olver & others, amici curiae,
submitted a brief.

*Edward F. Hines, Jr., Mitchell H. Kaplan, John Dane, Jr.,
& Thayer Fremont-Smith*, for The Procter & Gamble Manufac-
turing Company & another, amici curiae, submitted a brief.

---

[1] Inner City, Inc., Polaroid Sunglasses, Inc., and Polint Management
Services Corporation. We shall refer to the collective arguments of the
plaintiffs as arguments made by Polaroid.

*Brian A. Riley*, for Massachusetts Teachers Association, amicus curiae, submitted a brief.

*William F. Griffin, Jr., & Judith Ashton*, for Clark Equipment Company & others, amici curiae, submitted a brief.

*Glenn L. Rigby & Benjamin F. Miller*, of California, for Franchise Tax Board of California, amicus curiae, submitted a brief.

*William David Dexter*, of Washington, for Multistate Tax Commission, amicus curiae, submitted a brief.

*John Dane, Jr., & Mitchell H. Kaplan*, for Associated Industries of Massachusetts, amicus curiae, submitted a brief.

WILKINS, J. Polaroid Corporation (Polaroid) and its subsidiaries have conducted a unitary business in the United States and in numerous foreign countries for the purpose of the design, manufacture, and marketing of a variety of products, primarily in the field of photography. Well after the plaintiffs had filed their corporate excise returns for the years 1979 and 1980, the Commissioner of Revenue (commissioner)[2] redetermined their corporate excises for those years based on a worldwide unitary apportionment of the combined income of Polaroid and its various subsidiaries. In September, 1983, he made assessments of the plaintiffs' corporate excises amounting to approximately $5,500,000 more than shown on the plaintiffs' returns. In October, 1983, the plaintiffs paid those additional assessments with interest. By that time, they had already filed this action in the Supreme Judicial Court for the county of Suffolk, seeking a declaratory judgment that the commissioner's action was unlawful. A single justice reserved decision and reported the case to the full court on the complaint, the answer, and a statement of agreed facts.[3]

---

[2] In this opinion, references to the Commissioner of Revenue may from time to time refer to the commissioner in office at the time of a particular action.

[3] Although the commissioner's answer raises the defense that the plaintiffs have failed to exhaust their administrative remedies before the Appellate Tax Board, the commissioner states in his brief "that the broad issue of whether the unitary form of assessment is permitted under Massachusetts law is a question of wide public importance and 'is therefore an appropriate

The primary question at issue between the commissioner and Polaroid is the extent of the commissioner's statutory authority to employ a "unitary business" approach in determining a corporation's Massachusetts taxable net income (G. L. c. 63, §§ 38, 38A, 42A) to which the applicable tax rate (8.33%) is to be applied (G. L. c. 63, §§ 32, 39). This approach involves combining the income of all affiliated corporations and determining the portion of that income attributable to Massachusetts by a formula that is based on the relationship of Massachusetts property, payroll, and sales to worldwide property, payroll, and sales. See G. L. c. 63, § 38 (*c*). There is no doubt that it is permissible under the Constitution of the United States for Massachusetts to determine the plaintiffs' corporate excises by the use of the "unitary business" approach. See *Container Corp. of Am.* v. *Franchise Tax Bd.*, 463 U.S. 159 (1983). See also *Becton, Dickinson & Co.* v. *Department of Revenue*, 383 Mass. 786, 788-789 (1981). A second question is whether the commissioner may implement this method of determining a corporation's taxable net income allocated to Massachusetts without first adopting appropriate regulations, pursuant to the State Administrative Procedure Act (G. L. c. 30A).

We conclude that, whatever authority the commissioner has to use a "unitary business" approach would have to be found in G. L. c. 63, § 39A, and that he could properly exercise that authority only pursuant to "reasonable rules of apportionment" (G. L. c. 63, § 39A) promulgated in accordance with the procedures for the adoption of administrative regulations set forth in G. L. c. 30A. No such rules have been promulgated. Our conclusion on this question disposes of the issue of the propriety of the commissioner's additional assessments of the plaintiffs' corporate excises for 1979 and 1980. In order to clarify a matter of public importance, however, we add that, quite apart from the absence of necessary regulations, the commissioner lacks statutory authority to use the "unitary business" approach in the circumstances of this case.

one with which to deal in a declaratory proceeding.' *Andover Savings Bank* v. *Commissioner of Revenue*, 387 Mass. 229, 232-233 (1982)." We agree.

Polaroid was organized as a corporation in 1937 under the laws of Delaware and, since 1937, has been a Massachusetts corporate taxpayer subject to the excise imposed by G. L. c. 63. The other three plaintiff corporations are wholly owned subsidiaries of Polaroid which are qualified to do business in Massachusetts.[4] Additionally, Polaroid owns all the stock of twenty-six subsidiaries (foreign subsidiaries) incorporated under the laws of various countries around the world and subject to taxation in their countries of incorporation. None of the foreign subsidiaries filed any income tax return in this country for 1979 and 1980. The commissioner does not contest that during those years none of them was engaged in a trade or business in this country for Federal income tax purposes.

The commissioner made no adjustments for intercompany transfers or for payments made in excess of fair value in his audits of the plaintiffs for 1979 and 1980. For the purposes of this case, the commissioner does not contest that Polaroid and its subsidiaries conduct transactions with each other at arm's length, and Polaroid does not contest that the business of Polaroid and its subsidiaries is unitary within applicable State and Federal constitutional standards.

For each year since 1972 those plaintiffs in existence participated in a Massachusetts consolidated return of income, reporting the taxable net income of each determined by separately adjusting its Federal gross income and separately apportioning the taxable net income of each corporation to Massachusetts, without reference to the income and activities of any other Polaroid affiliate. Prior to 1979 neither the commissioner nor any predecessor questioned the over-all method followed by the plaintiffs, and none of them assessed the corporate excise on

---

[4] Polaroid also owns all the stock of PMC, Inc., a Massachusetts corporation that is classified as a security corporation under G. L. c. 63, § 38B (*a*), and is, therefore, subject to a special excise on its gross income (G. L. c. 63, § 38B [*b*] and [*c*]). Polaroid also owns all the stock of Polaroid World Trade Corporation, a domestic international sales corporation as defined in § 992 of the Internal Revenue Code, whose income, assets, and liabilities are treated under G. L. c. 63, § 38G, as those of Polaroid for the purpose of determining Polaroid's Massachusetts corporate excise. Polaroid owns the stock of two other corporations organized in New Jersey and Delaware, respectively.

the plaintiffs based on a unitary apportionment of the combined property, payroll, sales, and income of Polaroid and its subsidiaries. In 1982, however, the commissioner sent the plaintiffs a "unitary questionnaire" and conducted an audit of their returns. As a result of the audit, the commissioner redetermined the income portions of the plaintiffs' corporate excises by apportioning the combined earnings before taxes of Polaroid and all its subsidiaries, as reported in Polaroid's 1979 and 1980 annual reports to its stockholders.[5] Notices of the assessments and this action then followed.

The commissioner's claim of statutory authority to impose a unitary system for determining the plaintiffs' Massachusetts taxable net income rests almost entirely on language appearing at the end of the first paragraph of G. L. c. 63, § 39A, as amended through St. 1976, c. 415, § 33.[6] That paragraph, with the crucial language italicized, reads as follows: "The net income of a foreign corporation which is a subsidiary of another corporation or closely affiliated therewith by stock ownership shall be determined by eliminating all payments to the parent corporation or affiliated corporations in excess of fair value, and by including fair compensation to such foreign corporation for all commodities sold to or services performed for the parent corporation or affiliated corporations. *For the purposes of determining such net income, the commissioner* may, in the absence of satisfactory evidence to the contrary, presume that an apportionment by reasonable rules of the consolidated net income of corporations participating in the filing of a consolidated return of net income to the federal government fairly reflects the net income taxable under this chapter, or *may otherwise*

---

[5] The parties have agreed as follows: "A worldwide unitary business principle was not applied to foreign (i.e., non-U.S.) subsidiaries of any corporate taxpayer for years prior to 1979. In several instances prior to 1979, in administratively resolving disputes with taxpayers, the Commissioner or his predecessors based their determination of corporate excise taxes due on a unitary apportionment of income of multijurisdictional corporations and their subsidiaries participating in consolidated returns, sometimes at the taxpayer's request."

[6] The first paragraph of § 39A has remained essentially unchanged since its amendment by St. 1933, c. 303, § 2.

*equitably determine such net income by reasonable rules of apportionment of the combined income of the subsidiary, its parent and affiliates or any thereof.*" See G. L. c. 63, § 33, for identical language concerning domestic (Massachusetts) corporations.

Polaroid and various amici curiae argue that this paragraph is concerned exclusively with the absence of arm's length dealing between affiliates and point out that, for the purposes of this case, it is agreed that all such transactions were at arm's length. The commissioner, joined by other amici curiae, discerns a far broader grant of authority in the italicized language. Each side argues, eloquently and extensively, that its interpretation of § 39A is supported by legislative history, that failure to use the asserted authority between 1933 and 1982 is or is not significant, and that the statutory framework of G. L. c. 63 will aid the court in arriving at a conclusion favorable to it. We shall return to this contest in some of its aspects, but, for the moment, we need not decide whose intellectual firepower is on target.

If the italicized language of § 39A has the global significance, literally and figuratively, for which the commissioner argues, he is confronted with the statutory requirement that net income must be determined "by reasonable rules of apportionment." G. L. c. 63, § 39A. If he is right, any rules of apportionment under § 39A cannot be adopted on a case by case basis. Such rules would be a "regulation" as defined in G. L. c. 30A, § 1 (5) (a "rule . . . of general application and future effect"). The commissioner, as an "agency" (G. L. c. 30A, § 1 [2]), must comply with the requirements of G. L. c. 30A for the adoption of a regulation. See G. L. c. 14, § 6. He has adopted no regulations under § 39A applicable to 1979 and 1980.[7]

---

[7] The record shows that the commissioner has proposed regulations explaining "how the corporate excise applies to corporations that are engaged with affiliates in a unitary trade or business." He held a hearing on the proposed regulations early in 1984. For a summary of the proposed regulations and background leading to this litigation, see 3 S.M. Politi & F.K. Uttley, Worldwide Unitary Taxation in Mass., J. of St. Tax'n (No. 1) 25 (1984).

Decisions made without required regulations are invalid. *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare*, 346 Mass. 739, 741 (1964). Cf. *Tedford* v. *Massachusetts Hous. Fin. Agency*, 390 Mass. 688, 695 (1984). Corporate affiliates should have advance notice of their rights and obligations under a unitary approach. The retroactive imposition of new tax "rules" on a selective basis can be unfair to taxpayers. In any event, G. L. c. 30A requires the adoption of regulations, even if the commissioner were held to have authority under § 39A to use the unitary approach.

What we have said to this point establishes that the commissioner did not lawfully apply the unitary approach to Polaroid in 1979 and 1980. That conclusion, however, leaves unanswered the underlying question which is of importance to the commissioner, corporate taxpayers, and others. That question, as it may now be restated, is whether, pursuant to lawfully adopted regulations, the commissioner has the authority to impose a unitary business approach on affiliated corporations, some of which may be foreign (non-U.S.) corporations, to determine the income-based component of the corporate excise. We think it appropriate to undertake to resolve this issue.

The language in § 39A on which the commissioner relies, considered in isolation, could be read to authorize the unitary approach. We find no contrary view required either by the nonuse of the supposed authority for almost fifty years from the adoption of that language in 1933, or by the failure of the Legislature to enact explicit authorization of the unitary approach.[8] Statutory authority (like an easement in land) is not subject to atrophy or abandonment merely from nonuse. Legislative inaction gives no instructive signal concerning the construction of a statute enacted by a prior Legislature, particularly one enacted decades earlier. See *Franklin* v. *Albert*, 381 Mass. 611, 615 (1980); *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 193-194 (1976).

---

[8] Examples of proposals to enact such explicit authorization are 1981 House Bill No. 6794, 1982 Senate Bill No. 1273, 1983 House Bill No. 2240, 1983 Senate Bill No. 1657, and 1984 House Bill No. 6140.

It is true, of course, that the commissioner's recently adopted view does not deserve the deference we would have given to an interpretation contained in a regulation promulgated shortly after enactment of a statute. See *Xtra, Inc.* v. *Commissioner of Revenue*, 380 Mass. 277, 282 (1980).

On the other hand, words of a statute must be construed in association with other statutory language and the general statutory plan. Most of § 39A concerns the problem of, and means of solution for, a situation in which the taxable net income of a corporation may be artificially depressed because of less than arm's length transactions between affiliates.

One might well wonder whether the Legislature intended to grant broad authority, such as the commissioner finds, by a seemingly modest phrase added to § 39A, as will be seen, as an afterthought. The first sentence of § 39A mandates correction of the consequences of less than arm's length transactions. The first portion of the second sentence concerns the treatment of corporations that file consolidated returns with the Federal government. If the last portion of the second sentence of § 39A has as broad an effect as the commissioner says it does, he can ignore the mandate of the first sentence of § 39A, and the authorization of the first portion of the second sentence is unnecessary.[9] There are provisions in other sections of G. L.

---

[9] In *Blackmon* v. *Campbell Sales Co.*, 125 Ga. App. 859 (1972), the court dealt with the authority of the State revenue commissioner to combine the income of a parent corporation not doing business in Georgia with the income of subsidiaries doing business in Georgia where there was no finding of intercorporate transfers at less than fair value. The Georgia statute appears to have been taken from G. L. c. 63, § 39A. The first sentence was the same as the first sentence of § 39A. The second sentence of the Georgia statute was the same as the concluding language of the second sentence of § 39A on which the commissioner relies (but it omitted the first portion of the second sentence of § 39A). The court held that the second sentence did not authorize the tax commissioner to use the unitary rule. In an analysis that is similar to what we have just said about § 39A, the court said (*id.* at 862): "In our opinion the two sentences must be read together, the second as limited by the first, which as a mandatory rule has priority. Thus, in order to exercise the discretion under the second rule the Commissioner must find that the income of the taxpayer cannot be adjusted in the manner first prescribed. To hold otherwise would reflect a determination that the second sentence gives him an unbridled discretion to resort to the unitary

c. 63 that also present grounds for doubt about finding an intended grant of broad authority in the language of § 39A.[10]

theory even though the taxpayer has done everything the law requires, or even though the Commissioner could adjust the return to reflect what the law requires."

[10] We have no intention of resolving all Polaroid's various contentions that the commissioner's unitary approach is inconsistent with other provisions of G. L. c. 63. It is probably true that any inconsistency created by including in the calculation a domestic international sales corporation (see G. L. c. 63, § 38G) or a security corporation subject to a special excise (G. L. c. 63, § 38B) might require some change in the details of the commissioner's approach, but it would not alone invalidate it.

A more fundamental attack on the unitary system is that the commissioner's calculations require the inclusion of income of non-United States subsidiaries which is not includible in Federal gross income, the statutory starting point in calculating a corporation's taxable net income. See G. L. c. 63, § 30 (5)(*a*). Although it is not necessarily inappropriate to determine an excise by considering items that are not income in a tax sense (*Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co.*, 384 Mass. 607, 613 [1981]), a statutory pattern that determines taxable income by starting with Federal gross income casts doubt on the propriety of the adoption of a worldwide unitary approach in determining taxable net income.

Recognizing the significance of a statutory definition of net income based on a taxpayer's "federal taxable income," the Supreme Court of Nebraska recently concluded that Nebraska could not use a unitary approach in determining the taxable net income of the Kellogg Company (Kellogg), a company with plant facilities in several States and with seventeen foreign subsidiaries located throughout the world. *Kellogg Co.* v. *Herrington*, 216 Neb. 138 (1984). Kellogg wanted to apportion its worldwide income according to the ratio of Nebraskan to worldwide values of its property, payroll, and sales. *Id.* at 144. The Nebraska statute, like the Massachusetts statute but unlike the California Code (*id.* at 145-146), defined the taxpayer's entire net income for purposes of determining its franchise tax as "its federal taxable income derived from sources within this state." Neb. Rev. Stat. § 77-2734 (2) (1981). Although the Nebraska taxing statute apportioned taxable income by use of worldwide property, payroll, and sales factors, that statute, unlike the Uniform Division of Income for Tax Purposes Act (7A U.L.A. [Master ed. 1978]), expressly limited taxable income to Federal taxable income. Thus, the court held that the income of foreign subsidiaries was not to be included in the calculation. *Id.* at 148.

The Nebraska court did allow the inclusion of dividends received from Kellogg's foreign subsidiaries. *Id.* at 148. We need not decide whether the result would be different in Massachusetts because, as Polaroid argues, under G. L. c. 63, § 38 (*a*)(1), dividends included in net income are to be deducted (with certain exceptions) in allocating net income to Massachusetts. See *Dow Chem. Co.* v. *Commissioner of Revenue*, 378 Mass. 254, 267-272 (1979).

The foregoing considerations suggest that the commissioner's authority under § 39A is not as broad as he claims. In our resolution of this issue, we find dispositive the legislative and judicial background of the enactment of the first paragraph of § 39A. The 1933 revision of § 39A was made in response to the opinion of this court in *Commissioner of Corps. & Taxation* v. *J.G. McCrory Co.*, 280 Mass. 273 (1932). The taxpayer was a Massachusetts corporation doing business wholly in the Commonwealth. Its stock was owned by a Delaware corporation which did business in New York and owned various other subsidiaries. The commissioner concluded that the Massachusetts return did not show the taxpayer's true net income, assets, and liabilities. He estimated the excise by apportioning the income of the joint enterprise shown on its consolidated Federal tax return to the taxpayer based on the relationship of Massachusetts activities and property to the total of all activities and property of the consolidated enterprise. The Board of Tax Appeals found that the taxpayer's return as filed was correct and, in effect, that all transactions were at arm's length. *Id.* at 275-276, 278. That board concluded that the commissioner had no authority to recalculate the taxpayer's corporate excess and net income as he had, and this court agreed. *Id.* at 279. Significantly, the court said that the method followed by the commissioner on the facts disclosed (i.e., arm's length dealing) would conflict with the due process of law requirements of the Fourteenth Amendment in measuring one corporation's excise by reference to "property or income not belonging to the corporation sought to be taxed." *Id.* at 280. Right or wrong (and today it is wrong), this court stated that a unitary approach of the sort the commissioner wanted to apply would be unconstitutional, at least where the intercompany transactions were at arm's length.

The commissioner was concerned that our *McCrory* opinion would provide a clear means for corporations to avoid Massachusetts tax obligations. Early in 1933, he recommended legislation "in order to prevent wholesale evasion by means of subsidiary and controlled corporations of the manufacturing and business corporation excise tax law." 1933 House Doc. No.

69. He proposed an amendment to § 39A (and § 33) which contained the language adopted as § 39A with one minor change,[11] but without the crucial concluding language on which the present commissioner relies in this case. 1933 House Bill No. 71. That concluding language was added to the bill as enacted (St. 1933, c. 303, § 2) for reasons not apparent in the legislative history.

We know that the commissioner was concerned about tax evasion by means of intercorporate transactions that would depress the corporate excess and income of corporations subject to taxation in Massachusetts. He sought authority to make adjustments to correct the effect of less than arm's length transactions. He did not recommend that he be granted authority to use a unitary system such as he had tried to apply to the McCrory company, its parent, and other subsidiaries. As we just noted, this court had said within four months of his recommendation that such an approach would not be constitutional. *Commissioner of Corps. & Taxation* v. *J.G. McCrory Co.*, *supra* at 280. In such a situation we conclude that the Legislature did not intend by its amendment of § 39A to grant authority to the commissioner to engage in a practice that was then thought to be constitutionally impermissible.

The commissioner relies on G. L. c. 63, § 42, as amended by St. 1969, c. 599, § 1, to support his authority to use the unitary approach. It does not. The first paragraph of § 42 permits "a corporation" to apply to the commissioner to have its Massachusetts derived income allocated by a method other than that set forth in § 38. The cases of *Becton, Dickinson & Co.* v. *Department of Revenue*, 383 Mass. 786 (1981), and *W.R. Grace & Co.* v. *Commissioner of Revenue*, 378 Mass. 577 (1977), involved unsuccessful attempts by corporations to require the commissioner to permit them to use alternative apportionment methods. Section 42 applies only when a corporation seeks permission to use alternative allocation and appor-

---

[11] The commissioner proposed the word "allocation" in the first portion of the second sentence of § 39A in the place where the word "apportionment" appears.

tionment methods. The second paragraph allows the commissioner to use some reasonable alternative approach if the provisions of G. L. c. 63 "are not reasonably adapted to approximate *the corporation's* net income derived from business carried on within this commonwealth" (emphasis supplied). The commissioner's authority to use an alternative allocation approach applies only to "the corporation" which has applied for relief under § 42. We add that § 42 appears to have nothing to do with determining a corporation's taxable net income but only concerns the formula used to apportion that income. Thus § 42 itself seems not to authorize a unitary approach of the type adopted by the commissioner in this case to determine taxable net income even of a corporation seeking relief under § 42.

This case is remanded to the county court for entry of a declaratory judgment that the commissioner's additional assessments of the plaintiffs' corporate excises were unlawful.

                                         *So ordered.*