## THE GILLETTE COMPANY *vs.* COMMISSIONER OF REVENUE.

Suffolk. April 7, 1997. - July 31, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Taxation,* Corporate excise, Related corporations. *Constitutional Law,* Taxation, Commerce clause. *Statute,* Construction. *Commissioner of Revenue. Administrative Law,* Agency's authority. *Due Process of Law,* Taxation.

The Commissioner of Revenue lacked authority to employ the "unitary method" to determine the Massachusetts taxable income of a domestic corporation engaged in business through foreign subsidiary corporations, pursuant to a petition under G. L. c. 63, § 42, by a corporation seeking to use that method, where § 42, which applies to the apportionment of income, does not authorize an alternative method for the determination of net income other than as set forth in G. L. c. 63, §§ 30, 32B, and 38 (the statutory method): the Commissioner correctly denied certain applications for abatement of taxes based on amended returns using the unitary method. [674-679]

The apportionment formula of the statutory method (G. L. c. 63, § 38 [*c*]) for determination of Massachusetts taxable income of domestic corporations engaged in business through foreign subsidiary corporations was not shown by the taxpayer, by clear and cogent evidence, to be unfair where, when applied to a unitary business taxpayer's total income, the formula obtained an approximation of corporate income reasonably related to the corporation's activities conducted within the Commonwealth; as such the formula did not violate the due process clause [680-682] or the commerce clause [682-684] of the United States Constitution.

This court declined to consider an issue on appeal that was not raised before the Appellate Tax Board in the first instance. [684]


APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*Jonathan M. Zorn (Theodore M. Hess-Mahan & Steven A. Kaufman* with him) for the taxpayer.

*Thomas A. Barnico,* Assistant Attorney General, for the Commissioner of Revenue.

LYNCH, J. This is an appeal from a decision of the Appellate Tax Board (board) denying applications by The Gillette

Company (Gillette) for abatement of taxes for tax years 1975 through 1983. Gillette sought to have the Commissioner of Revenue (commissioner) recompute its corporate excise tax using the so-called "unitary method" of net income determination and apportionment. Relying on *Polaroid Corp.* v. *Commissioner of Revenue*, 393 Mass. 490 (1984), the board ruled that there was no statutory authority for using the unitary method. On appeal, Gillette claims that the board erred in ruling (1) that the unitary method was not authorized under G. L. c. 63, § 42; and (2) that requiring unitary businesses to use the "statutory method" did not violate the due process and commerce clauses of the United States Constitution. We granted Gillette's application for direct appellate review, and now affirm the board's decision.

1. a. *Facts.* The following stipulated facts were adopted by the board. Gillette is a Delaware corporation with its principal offices in Boston. Throughout the years at issue, Gillette engaged in worldwide unitary business with domestic (United States) and foreign (non-United States) affiliates.[1] At all relevant times, Gillette transacted business partly within and without Massachusetts.

Gillette engaged in business outside the United States through foreign subsidiary corporations. These subsidiaries did not conduct business in Massachusetts, but they did make interest and royalty payments to Gillette. These payments were income to Gillette and thus subject to tax in the local countries pursuant to foreign tax statutes, as modified by treaties negotiated with the United States. The subsidiaries withheld the tax owed by Gillette and paid it directly to the foreign government. Gillette also received royalty income from unrelated foreign manufacturers for the right to use its patents.

From 1975 to 1979, Gillette filed a combined return under G. L. c. 63, § 32B, with those United States affiliates which had a nexus with Massachusetts and participated in its Federal consolidated tax returns.[2] For tax year 1980, Gillette initially filed a combined return, but prior to a final assessment, amended

---

[1] A unitary business is a trade or business carried on by a group of affiliated corporations when the activities of the affiliates are dependent on or integrated with each other or contribute to each other, or there is a flow of value between such corporations. See 830 Code Mass. Regs. § 63.02 (1984) (repealed 1985).

[2] "If two or more domestic business corporations or foreign corporations participated in the filing of a consolidated return of income to the federal

the 1980 return using the unitary method. Gillette also filed amended returns for the tax years 1975 through 1977 using the unitary method and filed applications for abatement for tax years 1978 through 1979. For tax years 1981 through 1983, Gillette used the unitary method in preparing its initial returns. In short, Gillette sought to have its corporate excise tax liability for 1975 through 1983 assessed under the unitary method.

Gillette's actions were apparently prompted by the commissioner's moves to compel unitary businesses to employ the unitary method. Beginning in the late 1970's, the commissioner selectively assessed taxpayers under the unitary method. In the early 1980's, the commissioner formalized this approach through use of unitary business questionnaires, and finally, in 1984, the commissioner promulgated the corporate excise regulations, 830 Code Mass. Regs. § 63.02 (1984) (unitary business regulations). These regulations required unitary businesses to file a report of combined income of the unitary business group, and determine its taxable net income by reference to the combined group.[3]

In December, 1984, this court in *Polaroid Corp.* v. *Commissioner of Revenue, supra,* held that the commissioner lacked the statutory authority to use the unitary method. In January, 1985, the commissioner repealed the unitary business regulations.[4]

On appeal to the board, Gillette maintained that the promulgation of the unitary business regulations was based on the commissioner's determination that the statutory method provided in G. L. c. 63, § 38, was inadequate when applied to a unitary

government, the net income measure of their excises imposed under section thirty-two or section thirty-nine may, at their option, be assessed upon their combined net income, in which case the excise shall be assessed to all said corporations and collected from any one or more of them. . . ." G. L. c. 63, § 32B.

Pursuant to § 1501 of the Internal Revenue Code of 1986 (I.R.C.): "An affiliated group of corporations shall, subject to the provision of this chapter, have the privilege of making a consolidated return with respect to income tax imposed by [the I.R.C.] for the taxable year in lieu of separate returns." Foreign corporations do not fall within the definition of an "affiliated group." I.R.C. § 1504(a)(1)(A), (b)(3).

[3]The unitary method produces taxable net income markedly different from the statutory method and more favorable to Gillette.

[4]The commissioner denied all pending and future applications for the unitary method and granted abatements to taxpayers wrongfully assessed under this method. See TIR 85-2, 3 Official MassTax Guide at 435 (West 1997).

business. Furthermore, Gillette contended that the commissioner misinterpreted our holding in *Polaroid Corp.*, *supra*, when he repealed the unitary business regulations. Gillette argued that the *Polaroid Corp.* case only limited the commissioner's authority to impose the unitary method, but did not limit a taxpayer's right to apply to use the unitary method under G. L. c. 63, § 42.

b. *Corporate excise tax structure.* Massachusetts utilizes the so-called "statutory method" embodied in G. L. c. 63, § 38, to calculate the portion of a unitary business's net income (taxable net income) subject to our State corporate excise tax. Taxable net income is determined by taking the corporation's Federal net income, as defined in G. L. c. 63, § 30 (5) (*b*), applying statutory deductions enumerated in G. L. c. 63, § 38 (*a*), and multiplying the result by the three-factor apportionment formula in G. L. c. 63, § 38 (*c*). The apportionment formula is the weighted average of three factors — property, payroll, and sales — commonly used to compare the value of business conducted within and without the State.[5] Each factor is a fraction in itself, the numerator of which is the local corporate property, payroll, or sales; the denominator of which is the corporation's total property, payroll, or sales "everywhere" during the taxable year.

If two or more affiliated corporations have a nexus with Massachusetts and file a consolidated return for Federal tax purposes, they may elect to use their combined net income as the base income subject to apportionment. G. L. c. 63, § 32B.

---

[5]General Laws c. 63, § 38 (*c*) (1994 ed.), provides: "If the corporation has income from business activity which is taxable both within and without this commonwealth, its taxable net income, determined under the provisions of subsection (*a*), shall be apportioned to this Commonwealth by multiplying its taxable net income, determined under the provisions of subsection (*a*), by a fraction, the numerator of which is the property factor plus the payroll factor plus twice the sales factor, and the denominator of which is four."

The property factor is the value of the corporation's real and tangible personal property owned, rented, or used in the Commonwealth divided by the value of its property worldwide. G. L. c. 63, § 38 (*d*). The payroll factor is the amount of compensation paid in the State divided by the amount paid worldwide. G. L. c. 63, § 38 (*e*). The sales factor is the corporation's total sales within the State divided by its total sales worldwide. See G. L. c. 63, § 38 (*f*).

Since Gillette's appeal to the Appellate Tax Board, G. L. c. 63, § 38, has been amended. See St. 1995, c. 280, §§ 1, 2; St. 1996, c. 151, §§ 208, 209; St. 1996, c. 264, §§ 2-6. These amendments have no substantive effect on the issues in this case and neither of the parties attaches any significance to them.

When a corporation files a combined return, property, payroll, and sales of all the affiliated corporations are included in the denominator of the apportionment factors. Finally, if the allocation and apportionment provisions of G. L. c. 63, § 38, are not reasonably adapted to approximate the net income derived from business carried on within this State, G. L. c. 63, § 42, provides that the taxpayer may petition the commissioner to use a "method other than that set out" in § 38.

The unitary and statutory methods differ in how they account for foreign subsidiaries in the net income base and apportionment formula. The unitary method combines net income from all businesses in the unitary group, makes adjustments as necessary, and then apportions the income to the local jurisdiction using the unitary group's factors in the apportionment formula. There are two significant consequences. First, the unitary method's net income base includes income from foreign subsidiaries, thus increasing combined net income and eliminating intercompany transactions, such as interest and royalty payments. Second, all members in the unitary group are included in the statutory apportionment formula. This means that the property, payroll, and sales from foreign corporations are included in the denominator of the apportionment factors, thus decreasing the percent of combined net income apportioned to a State. With this background in mind, we now consider whether there is statutory authority for using the unitary method.

2. *Discussion.* There is no doubt that the unitary method is permissible under the Constitution of the United States. See, e.g., *Container Corp. of Am.* v. *Franchise Tax Bd.*, 463 U.S. 159 (1983). However, constitutional approval does not mean that taxpayers and taxing authorities are free to employ the unitary method when it suits their respective tax planning and assessment objectives. "[T]he State has no power to tax unless that power has been expressly conferred by statute." *Commissioner of Revenue* v. *Franchi*, 423 Mass. 817, 822 (1996). "The general rule of construction is that where the language of the statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words. *O'Sullivan* v. *Secretary of Human Servs.*, 402 Mass. 190, 194 (1988). This rule has particular force in interpreting tax statutes." *Commissioner of Revenue* v. *AMIWoodbroke, Inc.*, 418 Mass. 92, 94 (1994). In addition, "words of a statute must be construed in association with other statutory language and the general statutory plan."

*Polaroid Corp.* v. *Commissioner of Revenue*, 393 Mass. 490, 497 (1984). No method of determining tax liability is valid unless authorized by statute and assessed in conformity to its terms. See *Commissioner of Revenue* v. *AMIWoodbroke, Inc.*, *supra.*

In *Polaroid Corp.* v. *Commissioner of Revenue, supra,* we were asked to decide whether the commissioner had the statutory authority to employ the unitary method in determining a corporation's taxable net income. After holding that the commissioner could not lawfully use the unitary method without first adopting appropriate regulations, *id.* at 496, we declared that G. L. c. 63, §§ 39A and 42, did not grant the commissioner the authority to impose the unitary method. *Id.* at 500. At the same time, we observed in dictum that "§ 42 itself seems not to authorize a unitary approach of the type adopted by the commissioner in this case to determine taxable net income even of a corporation seeking relief under § 42." *Id.* at 501. We see no reason to disturb this conclusion.

"[A] statutory pattern that determines taxable income by starting with Federal gross income casts doubt on the propriety of the adoption of a worldwide unitary approach in determining taxable net income." *Id.* at 498 n.10. Massachusetts corporate excise statutes use consolidated Federal net income as the basis for calculating combined net income. See G. L. c. 63, §§ 30, 32B, 38. Pursuant to § 1504 of the Internal Revenue Code of 1986 (I.R.C.), consolidated Federal net income excludes income from foreign subsidiaries. Because the unitary method includes foreign affiliates' income, it may only be used if G. L. c. 63, § 42, provides an exception to the net income provisions found in §§ 30, 32B, and 38.

There is no indication that the Legislature intended G. L. c. 63, § 42, to provide an alternative method of calculating combined net income. "[Section] 42 appears to have nothing to do with determining a corporation's taxable net income but only concerns the formula used to apportion that income." *Id.* at 501. The relevant provision of § 42 reads, in pertinent part, as follows:

> "If the allocation and apportionment provisions of this chapter are not reasonably adapted to approximate the net income derived from business carried on within this commonwealth, a corporation may apply to the commissioner

to have its income derived from business carried on within this commonwealth determined by a method other than that set forth in section thirty-eight . . . .

"If, in the judgment of the commissioner the allocation and apportionment provisions of this chapter are not reasonably adapted to approximate the corporation's net income derived from business carried on within this commonwealth, the commissioner shall by reasonable methods determine the amount of net income derived from business activity carried on within this commonwealth. The amount thus determined shall be the net income taxable under this chapter and the foregoing determination shall be in lieu of the determination required by section thirty-eight. . . ."

The plain meaning of "allocation and apportionment" in this context is the assignment or distribution of business income of a multistate corporation to a specific State. See Black's Law Dictionary 75, 100 (6th ed. 1990). This meaning is consistent with a statute which authorizes an alternative method to determine the proportion of "net income derived from business carried on within this commonwealth." Indeed, past appeals under § 42 involved attempts by corporations to require the commissioner to use alternative apportionment methods. See *Becton, Dickinson & Co.* v. *Department of Revenue*, 383 Mass. 786, 790 (1981); *W.R. Grace & Co.* v. *Commissioner of Revenue*, 378 Mass. 577, 591 (1979); *Dow Chem. Co.* v. *Commissioner of Revenue*, 378 Mass. 254, 260 (1979). Section 42 has never been interpreted by this court as authority for using an alternative method of determining net income. Thus, we believe that the scope of § 42 is limited to allowing taxpayers to request an apportionment formula other than that set forth in § 38 (c).

This conclusion is bolstered by the legislative history of the statute. General Laws c. 63, § 42, was inserted by St. 1919, c. 355, § 20, as part of a larger statutory scheme to tax corporate excise and net income. Section 42 provided foreign corporations with an alternative method for "showing the amount of [their] annual net income derived from business carried on within the commonwealth." The statute was rewritten, St. 1933, c. 342, § 5, to clarify the timing for requesting an alternative allocation method and the commissioner's discretion when such a request

is made. In 1966, § 42 was substantially rewritten. St. 1966, c. 698, § 64. The revised statute eliminated references to foreign corporations and thus provided domestic corporations with a means of challenging the "allocation and apportionment" of income in G. L. c. 63, § 38. As one commentary at the time noted, "G. L. c. 63, § 42 has been amended by Section 64 of Chapter 698 of the Acts of 1966 to extend to domestic corporations the privilege of having their taxable income determined by some method other than that prescribed by G. L. c. 63, § 38 (*c*) if the formula in that latter section is 'not reasonably adapted to approximate the net income derived from business carried on within this commonwealth.' " Dane, Taxation of Corporations and Banks: 1966 Legislation, 52 Mass. L.Q. 42, 62-63 (1967). The legislative history indicates that § 42 only applied to the apportionment of income, not the determination of that income.

This interpretation is consistent with the prevailing view on the constitutionality of the unitary method when the 1933 and 1966 amendments were written. "The Legislature must be assumed to know the preexisting law and the decisions of this court." *Selectmen of Topsfield* v. *State Racing Comm'n*, 324 Mass. 309, 313 (1949). The 1933 amendment came one year after this court, in *Commissioner of Corps. & Taxation* v. *J.G. McCrory Co.*, 280 Mass. 273, 279-280 (1932), concluded that the unitary approach of the type the commissioner wanted to apply was unconstitutional. See *Polaroid Corp.* v. *Commissioner of Revenue*, 393 Mass. 490, 499-500 (1984) (Legislature did not grant authority for unitary method in 1933 amendment to G. L. c. 63, § 39A, where practice then thought constitutionally impermissible). Indeed, the unitary method was not widely accepted until the Supreme Court in *Container Corp. of Am.* v. *Franchise Tax Bd.*, 463 U.S. 159 (1983), endorsed California's use of the unitary method. Prior to *Container Corp., supra*, the prevailing view in this State was that the unitary method was unconstitutional. See *Commissioner of Corps. & Taxation* v. *J.G. McCrory Co., supra* at 279. Thus, we find it unlikely that the Legislature intended § 42 to authorize the unitary method.

We conclude that § 42 does not grant statutory authority for the unitary method. Without such statutory authority, the unitary method is not a permissible method of computing taxable net income. Therefore, it must follow that Gillette was not entitled to use the unitary method for the years in question.

Gillette contends that the unitary business regulations formal-

ized the commissioner's determination that the statutory method was not reasonably adapted to worldwide unitary businesses. Gillette argues that the commissioner may not retroactively revoke that prior determination. Consequently, Gillette argues that the commissioner is required to employ the unitary method in this case. We disagree.

"An administrative agency has .no inherent or common law authority to do anything." *Commissioner of Revenue* v. *Marr Scaffolding Co.*, 414 Mass. 489, 493 (1993). The commissioner's authority to assess taxes is derived from either express or implied statutory authority. See *id.*; *Polaroid Corp.* v. *Commissioner of Revenue, supra* at 500. At times, the commissioner has been mistaken in the interpretation of this authority. For this reason, the judiciary has the power to review the commissioner's actions to ensure that the authority delegated is used in accordance with the standards and policies adopted by the Legislature. See *Risk Mgt. Found. of the Harvard Medical Inst., Inc.* v. *Commissioner of Ins.*, 407 Mass. 498, 506 (1990), quoting *Opinion of the Justices*, 393 Mass. 1209, 1220 (1984). Indeed, "[t]he commissioner's expertise in tax matters might even bring the commissioner to the conclusion that a prior interpretation of a statute or regulation was wrong and should be changed." *Commissioner of Revenue* v. *BayBank Middlesex*, 421 Mass. 736, 741-742 (1996). When a prior determination has been proved wrong, a taxpayer's reliance on the error will not prevent the commissioner from correcting a mistake of law and assessing a tax that is otherwise lawfully due. See *Commissioner of Revenue* v. *Marr Scaffolding Co., supra* at 494-495; *John S. Lane & Son* v. *Commissioner of Revenue*, 396 Mass. 137, 141-142 (1985).

In *Commissioner of Revenue* v. *BayBank Middlesex, supra*, the taxpayer challenged the commissioner's change in stance with regard to the deductibility of tax-exempt premiums. We held that the commissioner could not retroactively assess back taxes and interest where the Department of Revenue had stated a clear policy on the issue that had remained unchanged and on which the taxpayers relied. *Id.* at 740-741. We specifically stated that this case was readily distinguishable from our cases holding that taxpayers have no right to claim estoppel and allowing the commissioner to correct "mistakes of law" based on a new interpretation of the revenue statutes. *Id.* at 740.

This is not a case where the commissioner is trying

retroactively to change a clear policy on an issue that had remained unchanged and on which the taxpayers had relied. See *Commissioner of Revenue* v. *BayBank Middlesex, supra* at 739-743. Prior to 1984, it was uncertain whether the commissioner had the authority to employ the unitary method.[6] In December, 1984, we concluded in *Polaroid Corp.* that the commissioner lacked the statutory authority to use the unitary approach. One month later, the commissioner repealed the unitary business regulations. The commissioner then granted abatements to taxpayers who were previously taxed in accordance with the unitary approach and denied pending and future applications seeking to employ this method. The commissioner was not estopped from concluding that a prior interpretation of § 42 was wrong, particularly when that conclusion is based on a decision of this court.

Furthermore, the relief available under § 42 is only available on a case-by-case basis. See *Polaroid Corp.* v. *Commissioner of Revenue, supra* at 500; *W.R. Grace & Co.* v. *Commissioner of Revenue,* 378 Mass. 577, 590-591 (1979). "The commissioner's authority to use an alternative allocation approach applies only to 'the corporation' which has applied for relief under § 42." *Polaroid Corp.* v. *Commissioner of Revenue, supra* at 501. "Before we will require the [c]ommissioner to adopt an alternative computation method, the taxpayer must prove by 'clear and cogent evidence' that the income attributed to the Commonwealth is in fact 'out of all appropriate proportion to the business transacted' here or has 'led to a grossly distorted result.' " *W.R. Grace & Co.* v. *Commissioner of Revenue, supra* at 591, quoting *Moorman Mfg. Co.* v. *Bair,* 437 U.S. 267, 274 (1978).

The board ruled that Gillette failed to prove by "clear and cogent evidence" that the income attributed to the Commonwealth under the statutory apportionment formula was out of appropriate proportion to the business transacted here. On appeal, Gillette relies solely on the commissioner's promulgation of regulations (which were subsequently repealed) as proof that the statutory method was inadequate. A blanket assertion that the statutory method is not suitable for all unitary businesses is not sufficient to warrant relief under § 42. See *Container Corp. of Am.* v. *Franchise Tax Bd., supra* at 182.

---

[6]"Brewing for the last four years, the unitary tax debate in Massachusetts has begun to boil during the past several months." Politi & Uttley, Worldwide Unitary Taxation in Massachusetts, 3 J. of St. Tax'n 25, 26 (1984).

3. a. *Due process clause.* Gillette maintains that the statutory method's apportionment formula violates the due process clause of the United States Constitution.[7] Gillette argues that the inclusion of interest and royalty payments from foreign subsidiaries in its net income base, without a corresponding inclusion of the property, payroll, and sales of the subsidiaries in its apportionment formula, is unfair, and led to a result out of appropriate proportion to the business transacted in Massachusetts. We disagree.

A State's apportionment formula need not allocate income with precision, see *Mobil Oil Corp.* v. *Commissioner of Taxes of Vt.*, 445 U.S. 425, 438 (1980); it must only be "fair." *Container Corp. of Am.* v. *Franchise Tax Bd.*, *supra* at 169. See *Exxon Corp.* v. *Department of Revenue of Wisc.*, 447 U.S. 207, 219 (1980); *W.R. Grace & Co.* v. *Commissioner of Revenue*, *supra* at 588-589 n.11. "The first, and again obvious, component of fairness in an apportionment formula is what might be called internal consistency — that is, the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business' income being taxed. The second and more difficult requirement is what might be called external consistency — the factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated." *Container Corp. of Am.* v. *Franchise Tax Bd.*, *supra.*

The Supreme Court has "long held that the Constitution imposes no single [apportionment] formula on the States . . . and that the taxpayer has the 'distinct burden of showing by "clear and cogent evidence" that [the State tax] results in extraterritorial values being taxed' " (citation omitted). *Container Corp of Am.* v. *Franchise Tax Bd.*, *supra* at 164, quoting *Exxon Corp.* v. *Department of Revenue of Wisc.*, *supra* at 221. We are required to strike down an apportionment formula only when the taxpayer has established by clear and cogent evidence that the apportioned income is out of all appropriate proportion to the business the taxpayer transacts in the State. *Container Corp. of Am.* v. *Franchise Tax Bd.*, *supra* at 170, 180-181. We are not required to disturb an apportionment formula so long as the State, in applying the formula to a unitary business taxpayer's total income, obtains a " 'rough approxima-

---

[7]Gillette makes no separate argument based on the Massachusetts Constitution.

tion' of the corporate income that is 'reasonably related to the activities conducted within the taxing State.' " *Exxon Corp.* v. *Department of Revenue of Wisc., supra* at 223, quoting *Moorman Mfg. Co.* v. *Bair, supra* at 273.

The three-factor formula adopted by the Legislature in G. L. c. 63, § 38 (*c*), is widely recognized as a fair method of apportioning net income. See *Becton, Dickinson & Co.* v. *Department of Revenue*, 383 Mass. 786, 790 (1981) (unsuccessful attempt to require commissioner to use alternative apportionment method); *W.R. Grace & Co.* v. *Commissioner of Revenue, supra* at 587-588 (same). "Indeed, not only has the three-factor formula met our approval, but it has become . . . something of a benchmark against which other apportionment formulas are judged." *Container Corp. of Am.* v. *Franchise Tax Bd., supra* at 170.

Gillette wants its foreign subsidiaries' property, payroll, and sales included in the apportionment formula because interest and royalty payments received from the subsidiaries were included in the apportionable income.[8] This argument ignores the fact that these payments represent income earned by Gillette, not its subsidiaries. From the foreign subsidiaries' perspective, the

---

[8] Gillette urges us to follow Justice Stevens's dissent in *Mobil Oil Corp.* v. *Commissioner of Taxes of Vt.*, 445 U.S. 425 (1980). In *Mobil Oil Corp.*, Vermont included Mobil Oil's foreign subsidiaries dividend income in its apportionable income bases. But in its three-factor formula, it failed to include the property, payroll, and sales factors responsible for producing the foreign subsidiary income. For reasons that are not important here, the majority declined to decide "whether application of Vermont's formula produced a fair attribution of [Mobil Oil's] dividend income to that State." *Id.* at 434. Justice Stevens, however, did reach the issue in a dissent. He stated: "Unless the sales, payroll, and property values connected with the production of income by the payor corporation are added to the denominator of the apportionment formula, the inclusion of earnings attributable to those corporations in the apportionable tax base will inevitably cause Mobil Vermont's income to be overstated." *Id.* at 461 (Stevens, J., dissenting). Justice Stevens thus concluded that Vermont's apportionment formula had been applied in an arbitrary and unconstitutional way. *Id.* at 451 (Stevens, J., dissenting).

We believe that Gillette's reliance on this dissent is misplaced. First, that viewpoint has never been adopted by the Supreme Court of the United States. See *National Cash Register Corp.* v. *Commissioner of Revenue*, 438 N.W.2d 86, 92 (Minn.), cert. denied, 493 U.S. 848 (1989). Moreover, *Mobil Oil Corp.* v. *Commissioner of Revenue of Vt., supra*, dealt with dividend or earnings paid to the parent corporation. Here, we are dealing with interest and royalty payments received in arm's-length transactions with foreign affiliates.

royalty and interest payments were expenses. As the board stated:

> "While it may be that, when a subsidiary's income is combined with the parent's income subject to apportionment, a taxing state must also combine the property, payroll, and sales figures of all members of a unitary business to calculate an apportionment formula, it does not follow that a combined apportionment formula is required when only the parent corporation's income is being taxed."

Because no foreign subsidiary income is included in the net income base, we see no reason to include these subsidiaries' property, payroll, and sales in the denominator of the apportionment factors.

In States with similar apportionment statutes, the courts have held that it is not unconstitutional to include interest and royalty income from foreign subsidiaries without including the subsidiaries' property, payroll, and sales in the apportionment factors. See *National Cash Register Corp.* v. *Commissioner of Revenue*, 438 N.W.2d 86, 92-93 (Minn.), cert. denied, 493 U.S. 848 (1989); *National Cash Register Corp.* v. *Comptroller*, 313 Md. 118, 153-154 (1988). The fact that these were subsidiary corporations does not change the nature of the underlying transaction. It is no more appropriate to include the property, payroll, and sales of these subsidiaries in the apportionment formula than it would be to include the corresponding amounts of the unrelated manufacturers who make royalty payments to Gillette. Thus, Gillette has failed to show by clear and cogent evidence that failure to include foreign subsidiaries' property, payroll, and sales in the apportionment formula was not fair or out of all proportion to income earned in Massachusetts.[9]

b. *Commerce clause.* "Besides being fair, an apportionment formula must, under the Commerce Clause, also not result in discrimination against interstate or foreign commerce." *Container Corp. of Am.* v. *Franchise Tax Bd., supra* at 170. In the interstate context, the antidiscrimination principle has not in

---

[9]Gillette presents a statistical table in an attempt to show that there is a statistical deviation between the unitary and statutory method. This information was not included in the stipulated facts or adopted by the board. Thus, we decline to rely on it as proof that there is a statistical disparity between the unitary and statutory methods.

practice required much in addition to the due process fairness requirement. *Id.* at 171. In the foreign context, careful attention must be paid to avoid double taxation of foreign source income and impermissible interference with Federal uniformity of foreign tax policy. See *id.*; *Mobil Oil Corp.* v. *Commissioner of Taxes of Vt.*, *supra* at 446; *Japan Line, Ltd.* v. *County of Los Angeles*, 441 U.S. 434, 446-447 (1979).

Gillette contends that the statutory method inevitably leads to multiple taxation because income derived from foreign subsidiaries is included in taxable net income. For the reasons stated in Part 3. a., *infra*, this argument must fail. We need only reiterate that the interest and royalty payments represent income earned by Gillette in arm's-length transactions. These payments were expenses, not income, for the foreign subsidiaries. Thus, there was no double taxation of foreign subsidiary income.

While it is true that Gillette itself was subject to tax on royalty and interest income in foreign countries, it has failed to demonstrate that double taxation in fact exists. "[S]peculative concerns with multiple taxation provide insufficient basis for invalidating a tax derived from a reasonable apportionment formula reasonably applied." *W.R. Grace & Co.* v. *Commissioner of Revenue*, *supra* at 589. The record indicates that Gillette did not pay taxes on this income in many foreign countries, including Belgium, Denmark, England, Germany, Indonesia, Norway, Netherlands, and Spain. Cf. *Container Corp. of Am.* v. *Franchise Tax Bd.*, *supra* at 189-193 (double taxation on foreign source income not impermissible where not inevitable and no reasonable alternative); *Japan Line, Ltd.* v. *County of Los Angeles*, *supra* at 445-447 (double taxation on foreign property impermissible where ad valorem property tax scheme makes it inevitable).

Moreover, there is no absolute prohibition on State-induced double taxation in the international context. *Container Corp. of Am.* v. *Franchise Tax Bd.*, *supra* at 189. "Although double taxation in the foreign commerce context deserves to receive close scrutiny, that scrutiny must take into account the context in which the double taxation takes place and the alternatives reasonably available to the taxing State." *Id.* The royalty and interest income from foreign subsidiaries would still be subject to double taxation under the unitary method. As the Supreme Court stated, "it would be perverse, simply for the sake of avoiding double taxation, to require [a State] to give up one alloca-

tion method that sometimes results in double taxation in favor of another allocation method that also sometimes results in double taxation." *Id.* at 193. We conclude that Gillette has failed to show "clear and cogent evidence" that the statutory method violated the commerce clause.

c. *Prior version of G. L. c. 63, § 32B.* Finally, we decline to consider Gillette's argument that the prior version of G. L. c. 63, § 32B, which was in effect for the tax years at issue, facially discriminated against foreign commerce. "An issue of law not presented to the board may not be raised here for the first time." *Shea* v. *Commissioner of Revenue,* 390 Mass. 1001, 1001 (1983), citing *Roda Realty Trust* v. *Assessors of Belmont,* 385 Mass. 493, 495 (1982). We find no suggestion in the pleadings or the decision below that the prior version of § 32B was at issue. Thus, we conclude that this argument is not properly before this court.

The decision of the Appellate Tax Board is affirmed.

*So ordered.*