## ADDISON MILLER, INC. v. COMMISSIONER OF TAXATION.

81 N. W. (2d) 89.

February 8, 1957—No. 36,908.

*Oppenheimer, Hodgson, Brown, Baer & Wolff* and *J. R. Oppenheimer,* for relator.

*Miles Lord,* Attorney General, and *Arthur C. Roemer,* Special Assistant Attorney General, for respondent.

Frank T. Gallagher, Judge.

Certiorari to the Board of Tax Appeals upon the relation of Addison Miller, Inc.

This case involves a relationship between two business entities, one named Addison Miller Company, the other named Addison Miller, Inc.

It appears from the record that prior to 1938 Addison Miller, Inc., hereinafter referred to as the corporation, was engaged in the busi-

ness of performing certain services for railroad companies, such as laying tracks, maintenance work on railroad tracks, cleaning and otherwise servicing railroad cars, and operating ore docks, etc.

In the year 1937 a partnership was formed by the same persons with the partners having the same shares of ownership as they had as stockholders in the corporation. Essentially the partnership engaged in the same activities as the corporation, and it further appears that for practical purposes the corporation ceased carrying on such business. It also appears that the contracts under which the corporation was performing the services for the railroad companies were renegotiated by the railroads with the partnership. The equipment necessary to perform these various services continued to be owned by the corporation. It was stipulated by the parties to this suit that during the taxable years in question the corporation rented this equipment to the partnership for an amount equivalent to the annual depreciation allowable for Federal and state income tax purposes. It was further stipulated that during these taxable years, namely, the years 1940 and 1942 through 1947, the partnership was indebted to the corporation in an average amount each year from $310,602.56 to $208,894.47. These amounts were carried on the partnership books as an open account due the corporation. It was pointed out on oral argument by the attorney for the corporation that what actually had happened was that the partnership just used the money from the corporation as it was needed.

The commissioner of taxation, under M. S. A. 290.34, subd. 1, increased for Minnesota income tax purposes the amount of income by way of rent for the equipment to the corporation and also increased the corporation's gross income by way of interest, which increase was measured by four-percent simple interest on the average amount of indebtedness due the corporation each year from the partnership. It was stipulated that the indebtedness was subject to oral agreement between the corporation and the partnership that no interest was to be charged upon the amounts owing from time to time; that no interest was ever in fact paid to the corporation; and that there was never at any time an interest obligation upon

which the corporation could have successfully maintained a suit and recovered judgment against the partnership. As the commissioner had entered a separate order for each of the years involved determining and assessing additional income tax against the corporation for the above-mentioned years, the corporation appealed from each of the seven orders of the Minnesota Board of Tax Appeals. Inasmuch as all of the seven cases involved the same facts and legal principles, varying only as to the amount involved for each year, they were consolidated for hearing before that board. The Board of Tax Appeals affirmed the commissioner's order for each of the seven cases and wrote a memorandum which was applicable to each of the cases.

On certiorari to this court it is the contention of the corporation that: (1) The order in each of the cases was not in conformity with the law; (2) that the findings of fact for each of the cases were contrary to and not sustained by the evidence.

■ With respect to the first assignment of error, § 290.34, subd. 1, reads as follows:

"**Conducting business in such a way as to create losses or improper net income.** When any corporation liable to taxation under this chapter conducts its business in such a manner as, directly or indirectly, to benefit its members or stockholders or any person or corporation interested in such business or to reduce the income attributable to this state by selling the commodities or services in which it deals at less than the fair price which might be obtained therefor, or buying such commodities or services at more than the fair price for which they might have been obtained, * * * the commissioner of taxation may determine the amount of its income so as to reflect what would have been its reasonable taxable net income but for the arrangements causing the understatement of its taxable net income or the overstatement of its losses, having regard to the fair profits which, but for any agreement, arrangement, or understanding, might have been or could have been obtained from such business."

The Board of Tax Appeals in its memorandum interpreted this statute to mean that when either one of four circumstances are pres-

ent the commissioner may determine the amount of the corporation's income as was done in this case. We here set forth the first two of those circumstances only as the third and fourth are not involved in this case. Viewed as interpreted by the board, the statute would read as follows:

### Conducting a Business in Such a Way as to Create Losses or Improper Net Income.

When any corporation liable to taxation under this chapter conducts its business in such a manner as, directly or indirectly,

1. to benefit its members or stockholders or any person or corporation interested in such business or

2. to reduce the income attributable to this state by

(a) selling the commodities or services in which it deals at less than the fair price which might be obtained therefor, or

(b) buying such commodities or services at more than the fair price for which they might have been obtained.

It is the position of the corporation that this statute would apply only if there was a buying or selling of commodities or services in which the corporation deals. It then contends that such buying or selling is not involved in this case. On the other hand, the Board of Tax Appeals takes the view that the buying or selling of commodities or services is not necessary to the operation of this statute, inasmuch as the powers given the commissioner under § 290.34, subd. 1, may be exercised under No. 1 as interpreted by the Board of Tax Appeals.

We cannot subscribe completely to the board's view because its No. 1 and No. 2 when read in context in the original act set forth above are all in one sentence, and (a) and (b) apply to the whole sentence. On the other hand we are still of the opinion that the wording of the statute does apply to the facts presented in this case.

The corporation argues that the relationships involved here are those of lessor-lessee and debtor-creditor and that such relationships are entirely different from vendor-vendee relationships. The applicability of this statute could hardly turn on the necessity of finding a vendor-vendee relationship. The reason for this is that no one could argue that a corporation could avoid the effects of the statute

by merely giving away its commodities or services to its shareholders because the relationship thus created was that of donor-donee rather than vendor-vendee. In other words, it could not reasonably be said, where service and commodities had been given to the shareholders, that a sale had not taken place but merely a gift had been made and thus avoid the statute. For example, if the corporation were making desks, could it claim that a sale had not taken place if it gave them to the partnership, which in turn might sell them at a profit to a wholesaler? We think not because from a practical standpoint transactions are just not handled in that manner in the business world.

In the case at bar the partnership was able to commence and carry on business with the free use of corporation's money and land;[1] and was also able to have the necessary equipment to carry on the business by merely paying what was allowable on the corporation's tax returns as depreciation for such equipment. Who could say (even though the relationship technically created was that of lessor-lessee and debtor-creditor) that this corporation was not performing a valuable service for the partnership? The word "services" is not a simple word with a simple meaning leaving no room for construction but is a word with a multiplicity of meanings. Walling v. Public Quick Freezing & Cold Storage Co. (S. D. Fla.) 62 F. Supp. 924. It may be said that the word varies in meaning according to the context in which it is found. Further, it would be impracticable to attempt a definition which would form a test for every case that might arise. Journal Pub. Co. v. State Unemployment Comp. Comm. 175 Ore. 627, 155 P. (2d) 570. It has also been stated that the term "services" involves more than mere labor and signifies much more than merely the act of performing labor and may include, as well, expenditures, materials, and things furnished. People v. McCord, 15 Cal. App. (2d) 136, 59 P. (2d) 587.

We feel that the word "services" as used in this particular statute is broad enough to cover the particular services that the corporation was rendering its shareholders in this case, namely, that of allowing

---

[1]The reason for this is that land may not be depreciated.

them to use its money and land for nothing; and allowing them to rent the equipment necessary to carry on their business for the same amount the corporation was allowed to take as depreciation on such equipment. For these reasons we hold with respect to the corporation's first assignment of error that the orders of the Board of Tax Appeals affirming the commissioner's orders were in conformity with the law, and the Board of Tax Appeals must be affirmed in this respect.

■ In regard to the corporation's second assignment of error it is contended that the orders of the Board of Tax Appeals are not supported by the evidence. These orders affirmed the orders of the commissioner. Section 290.34, subd. 1, as cited above, empowers the commissioner to make a determination of what the corporation's income would have been without the arrangement causing the understatement of its taxable net income. In doing this the commissioner must take into consideration the fair profits the corporation could have or might have obtained in the absence of such an agreement. Section 271.06, subd. 6, makes the orders of the commissioner prima facie valid in every case.

The facts show that the partnership was indebted to the corporation during the following years in the following amounts:

| | |
|---|---|
| 1940 | $208,894.47 |
| 1942 | $294,012.02 |
| 1943 | $310,602.56 |
| 1944 | $247,572.45 |
| 1945 | $220,384.38 |
| 1946 | $261,151.13 |
| 1947 | $303,336.47 |

With respect to the amounts of these indebtednesses the commissioner raised the income of the corporation in the following amounts for the following years:

| | |
|---|---|
| 1940 | $ 8,355.78 |
| 1942 | $11,760.48 |
| 1943 | $12,424.10 |

| | |
|---|---|
| 1944 | $ 9,902.90 |
| 1945 | $ 8,815.37 |
| 1946 | $10,446.04 |
| 1947 | $12,133.46 |

These increases were measured by applying a rate equal to four percent, simple interest, to the average of the beginning and ending of indebtedness for each of the years.

With respect to the rent it appears that the actual rent paid, based on the depreciation as shown on the corporation's tax returns, was in the following amounts for the following years:

| | |
|---|---|
| 1940 | $31,943.47 |
| 1942 | $56,969.22 |
| 1943 | $76,907.76 |
| 1944 | $90,801.23 |
| 1945 | $96,212.34 |
| 1946 | $58,796.94 |
| 1947 | $46,669.08 |

The commissioner raised the income attributable to the corporation by increasing the above rents for the following years in the following amounts:

| | |
|---|---|
| 1940 | $ 968.61 |
| 1942 | $ 1,695.93 |
| 1943 | $ 1,763.50 |
| 1944 | $ 1,566.52 |
| 1945 | $ 1,174.56 |
| 1946 | $ 892.43 |
| 1947 | $ 687.12 |

There is opinion testimony in the record by an employee of the partnership that similar rents could not have been obtained from a third party. He testified that the equipment was scattered over 110 locations between Chicago, Portland, and Seattle and that it would have been out of the question to collect the equipment and then rent it. However, there is no testimony in the record on behalf of the corporation that it could not have received more rent if it had

been willing to enter into an arrangement with a third party under which it would have assigned its contracts to such a stranger and let such a stranger use its money. Rather it appears to us that any stranger or third party offered such an arrangement as was furnished the partnership in the instant case would have paid at least what the commission here assessed.

We cannot say that the determination of the Board of Tax Appeals is arbitrary and unreasonable in affirming an increase of rental ranging from 1.2 percent to 3.1 percent, nor can we say, as contended by the corporation, that a four-percent interest charge on the sums of money involved in this case is unreasonable because these sums were carried on the partnership books as an open account. The undisputed fact is that the partnership used this money and paid no consideration for it. Thus it must be said that the order of the Board of Tax Appeals in this respect must also be affirmed.

Affirmed.

JUDGE THOMAS GALLAGHER took no part in the consideration or decision of this case.