COMMISSIONER OF REVENUE *vs.* AMIWOODBROKE, INC.
(and a companion case[1]).

Suffolk. April 6, 1994. - June 9, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Statute*, Construction. *Taxation*, Corporation, Corporate excise, Related corporations. *Words*, "Services."

The term "services performed" as it appears in G. L. c. 63, §§ 33 and 39A, includes a subsidiary corporation's making an interest-free loan to its parent corporation; as a result, imputed interest on such loans is correctly included in the net income of the subsidiary corporation for tax purposes pursuant to those statutes. [94-97]

APPEALS from decisions of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Eric A. Smith*, Assistant Attorney General, for the Commissioner of Revenue.

*Louis J. Marett* (*Marian S. Wossum* with him) for the taxpayers.

*William E. Halmkin & Donald W. Parker*, for The New York Times Company & others, amici curiae, submitted a brief.

ABRAMS, J. The question presented is whether the issuing of interest-free loans from a subsidiary to a parent is a "service[ ] performed" within the meaning of G. L. c. 63, §§ 33 and 39A (1992 ed.).[2] The Commissioner of Revenue (com-

---

[1]Commissioner of Revenue *vs.* Inhalation Therapy Services, Inc.

[2]General Laws c. 63, § 33 (1992 ed.), applies to domestic corporations (AMIWoodbroke) and G. L. c. 63, § 39A (1992 ed.), applies to foreign corporations (ITS). Both sections contain the same language, which provides in relevant part: "The net income of a domestic business [or foreign] corporation which is a subsidiary of another corporation or closely affili-

missioner), appeals from two decisions of the Appellate Tax Board (board) granting the taxpayers' applications for tax abatement. The commissioner assessed corporate tax deficiencies against the taxpayers, AMIWoodbroke, Inc. (AMIWoodbroke), and Inhalation Therapy Services, Inc. (ITS), relating to their corporate excise tax returns for the fiscal year ending August, 1988. After paying the assessments, the taxpayers filed applications for abatement which the commissioner denied. The taxpayers appealed, and the board granted their requests for abatements. We transferred the appeal to this court on our own motion. We conclude that the term "services performed" includes interest-free loans made by a subsidiary to a parent corporation. We reverse the decisions of the board.

*Facts.* The facts agreed to are as follows. The taxpayers are wholly-owned subsidiaries of American Medical International, Inc. (AMI). AMIWoodbroke is a Massachusetts corporation engaged in the operation of two for-profit hospitals in Massachusetts. ITS is a Delaware corporation having a place of business in Massachusetts. AMI is a Delaware corporation with its principal place of business in California. AMI had no office or business in Massachusetts and was not subject to Massachusetts corporate excise during the year in question.

During the fiscal year ending on August 31, 1988, AMIWoodbroke and ITS loaned substantial sums to AMI. AMIWoodbroke loaned AMI $14,000,340; ITS loaned $21,609,991 to AMI. The taxpayers did not receive any interest or other consideration for the loans. AMI, however, made charges against the net income of AMIWoodbroke for financial and technical support and management services that it provided. These charges against AMIWoodbroke were at amounts equivalent to arm's length transactions and to-

ated therewith by stock ownership shall be determined by eliminating all payments to the parent corporation or affiliated corporations in excess of fair value, and by including fair compensation to such domestic business [or foreign] corporation for all commodities sold to or services performed for the parent corporation or affiliated corporations."

taled $1,001,496 for the fiscal year. In May, 1990, the commissioner assessed additional corporate excise taxes against AMIWoodbroke and ITS, based on the imputation of interest income for the loans to AMI. After adjusting the taxpayers' net incomes to include compensation for their loans to AMI, the commissioner assessed $163,349.24 against AMIWoodbroke and $13,988.53 against ITS. The taxpayers paid the commissioner in full satisfaction of the assessment, which included tax, interest, and penalty.

*Discussion.* We are faced with a question of statutory interpretation. The precise issue is whether the loans made by the taxpayers to the parent are included within the meaning. of the statutory language "all commodities sold to or services performed for" the parent corporation.

The general rule of construction is that where the language of the statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words. *O'Sullivan* v. *Secretary of Human Servs.*, 402 Mass. 190, 194 (1988). This rule has particular force in interpreting tax statutes. There is no power to tax unless such authority is expressly conferred by statute. *DiStefano* v. *Commissioner of Revenue*, 394 Mass. 315, 325-326 (1985). Thus, we are mindful that "[t]axing statutes are to be construed strictly against the taxing authority, and all doubts resolved in favor of the taxpayer." *Dennis* v. *Commissioner of Corps. & Taxation*, 340 Mass. 629, 631 (1960).

The taxpayers contend that the plain meaning of the term "services performed" does not include intercompany loans.[3] They assert that, if the Legislature intended the statute to cover interest-free loans, it could have drafted language which expressly included such transactions. In the absence of a more specific statute, the taxpayers argue that the commissioner does not have the statutory authority to impute addi-

---

[3]We acknowledge the amicus brief submitted by The New York Times Company, Service Merchandise Co., Inc., and Loews Theatre Management Co., Inc.

tional compensation for the interest-free loans made to their parent, AMI. We do not agree.

The common and ordinary meaning of "services" is broad enough to encompass the loaning of money. Webster's Third New International Dictionary 2075 (1961) defines service, generally, as follows: "5 a: an act done for the benefit or at the command of another . . . 9 a: action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something." The issuing of an interest-free loan is both "an act done for the benefit of" the parent corporation and an action "that assists or benefits" the parent corporation.

Our cases support a broad interpretation of the term "services." We have stated that "[t]he meaning of the word 'services' is broad enough to include expenditures as well as labor." *Tracy* v. *Waters*, 162 Mass. 562, 563 (1895). See *First Nat'l Bank* v. *Attorney Gen.*, 371 Mass. 773, 777 (1977) (referring to "banks' loans, deposits, and other services"), rev'd on other grounds, 435 U.S. 765, 770 n.4 (1978). See also *Back Bay Nat'l Bank* v. *Brickley*, 254 Mass. 261, 263 (1926) (referring to "services" in making "notes and loans"). In other contexts, we also have interpreted the term "services" broadly. See *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 80-81 (1977) (sales of motor vehicle insurance policies constitute sales of services within the meaning of G. L. c. 93A, § 9).

Courts in other jurisdictions lend further support for a very broad definition of the word "services."[4] The Supreme Court of Minnesota, construing a statute very similar to G. L. c. 63, § 33, concluded that the term "services" included interest-free loans from a subsidiary to its parent cor-

---

[4]See, e.g., *Van Zandt* v. *Fort Worth Press*, 359 S.W.2d 893, 895 (Tex. 1962), quoting *Creameries of Am.* v. *Industrial Comm'n*, 98 Utah 571 (1940) ("In ordinary usage the term 'services' has a rather broad and general meaning. It includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed"); *Blackmon* v. *Campbell Sales Co.*, 125 Ga. App. 859, 864 (1972).

poration. See *Addison Miller, Inc.* v. *Commissioner of Taxation*, 249 Minn. 24 (1957). The court stated, "We feel that the word 'services' . . . is broad enough to cover the particular services that the corporation was rendering its shareholders in this case, namely that of allowing them to use its money and land for nothing." *Id.* at 28-29. It is clear that AMIWoodbroke and ITS performed a service for AMI by allowing it to use substantial amounts of money at no cost.

In challenging the application of the statute, the taxpayers look to a similar taxing provision of the Federal Internal Revenue Code. See 26 U.S.C. § 482 (1988). The taxpayers assert that the more detailed language of the Federal statute indicates that the State statute was not intended to apply to intercompany indebtedness.[5] Federal statutes and regulations offer limited guidance in interpreting the language of a State statute. In essence, the taxpayers are merely rearguing the point that the Legislature could have drafted a statute which contained more specific language. The meaning of the statute does not change simply because the Legislature chose to rely on the general terms "all commodities sold to or services performed for the parent corporation" rather than enumerating all the conceivable transactions between corporations.

Last, the taxpayers argue that the legislative history of G. L. c. 63, §§ 33 and 39A, does not support a broad interpretation of the term "services." "Ordinarily, we do not resort to the legislative history of a statute where it is clear and unambiguous on its face. . . . Yet, in interpreting a general but undefined term used in a taxing statute, we have sanctioned an evaluation of the legislative history so as to reach a result consistent with the statute's purpose." *McCarthy* v. *Commissioner of Revenue*, 391 Mass. 630, 633 (1984). We

---

[5]Specifically, the regulations promulgated under 26 U.S.C. § 482 (1986) divide the types of transactions to which § 482 applies into four categories: performance of services; use of tangible property; transfer of property; and loans or advances. See Treas. Reg. § 1.482-2T (1993). Because the regulation distinguishes the performance of services from the issuing of loans, the taxpayers conclude that the term "services" should not be interpreted to include the lending of money.

know that, in drafting G. L. c. 63, § 39A, "the commissioner was concerned about tax evasion by means of intercorporate transactions that would depress the corporate excess and income of corporations subject to taxation in Massachusetts." *Polaroid Corp.* v. *Commissioner of Revenue*, 393 Mass. 490, 500 (1984). When the statute was enacted, the commissioner "sought authority to make adjustments to correct the effect of less than arm's length transactions." *Id.* The statute was intended to address precisely the sort of transactions at issue in this case.

Our interpretation of the term "services" gives effect to the statute's broad remedial purpose. That the Legislature could have drafted a more specific statute does not change the meaning of the one it did draft. We conclude that the term "services" includes the issuing of interest-free loans from a subsidiary to a parent corporation. The decisions of the Appellate Tax Board are reversed.

*So ordered.*