560                                    429 Mass. 560 (1999)

The Prudential Insurance Company of America v. Commissioner of Revenue.

The Prudential Insurance Company of America vs.
Commissioner of Revenue.

Suffolk. February 4, 1999. - May 10, 1999.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Taxation,* Insurance company, Retaliatory tax. *Constitutional Law,* Equal protection of laws, Taxation. *Insurance,* Foreign insurance company. *Statute,* Construction.

The Appellate Tax Board correctly concluded that the Commissioner of Revenue properly treated separately an insurance company's life insurance premiums and health and accident insurance premiums for retaliatory tax purposes under the express provisions of G. L. c. 63, § 21 and § 23, respectively, where nothing in G. L. c. 175, § 159, is to the contrary and where G. L. c. 63, § 24A, provides no basis for aggregation of the premiums for tax purposes. [563-567]

The retaliatory premium tax provisions of G. L. c. 63, which provide for separate and not aggregate treatment of life insurance premiums and health and accident insurance premiums, have a rational relation to the furtherance of a legitimate state interest, viz., to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes and, as such, do not violate equal protection guarantees under the State and Federal Constitutions. [567-570]

An insurance company's use of an aggregate method of computing retaliatory taxes, in contravention of the instructions on the tax return, constituted an "obvious error apparent on the face of the return" such that, under G. L. c. 62C, § 26(c), the Commissioner of Revenue was not required to issue a notice of assessment before assessing a deficiency. [570-571]

Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*Matthew J. Zinn,* of the District of Columbia (*Stephen M. Politi* with him) for the plaintiff.

*Thomas A. Barnico,* Assistant Attorney General, for the defendant.

*Holly K. Hemphill & Carl R. Erdmann,* of the District of Columbia, *& David S. Davenport,* for American Council of Life Insurance & others, amici curiae, submitted a brief.

WILKINS, C.J. We consider whether it is lawful for the Commonwealth to calculate retaliatory taxes on insurance premiums of a foreign insurer separately for life insurance premiums and for premiums on all other lines of insurance. On the appeal of The Prudential Insurance Company of America (Prudential) from a ruling of the Commissioner of Revenue (commissioner), the Appellate Tax Board (board) concluded that the separate treatment of Prudential's life insurance premiums and health and accident premiums for retaliatory tax purposes was required by statute and did not violate the equal protection provisions of the State and Federal Constitutions. Prudential, a New Jersey corporation that collected premiums on both life insurance and health and accident insurance in the Commonwealth during the 1990 and 1991 tax years, appealed from the board's decision. We granted Prudential's application for direct appellate review and now affirm the board's decision.

Under a typical insurance taxation scheme, States, including Massachusetts, may impose two taxes on insurance companies doing business in the State. All foreign and domestic insurance companies generally pay a premium tax on policies allocable to the taxing State. The taxing State may also levy a retaliatory tax on foreign insurers whose home State would impose higher taxes for the same extent of business on a hypothetical insurer from the taxing State. Retaliatory insurance taxes have existed in some States for over one hundred years and are currently in effect in all but one State.[1] In general, retaliatory taxes are supported by the insurance industry.[2]

The principal disputes in this appeal are whether the relevant Massachusetts excise tax statutes require aggregation of a foreign insurer's premium tax liability for the purpose of calculating its Massachusetts retaliatory tax obligation, and, if aggregation is not required, whether the separation of life insurance premiums from other premiums for retaliatory tax purposes is constitutional. On its 1990 and 1991 tax returns, Prudential made a calculation of its possible liability for Massachusetts

---

[1]See note 7 below.

[2]The amicus brief of American Council of Life Insurance, Life Insurance Association of Massachusetts, Inc., and American Insurance Association, supporting the position of Prudential, states that their members "benefit from the greater uniformity in the system of state insurance taxation that is fostered by the existence of retaliatory laws." See *Western & S. Life Ins. Co.* v. *State Bd. of Equalization*, 451 U.S. 648, 669 n.22 (1981).

retaliatory taxes by combining all its Massachusetts premium tax obligations, both life insurance and accident and health premiums. Prudential then determined what aggregate premium taxes New Jersey would have imposed on a hypothetical Massachusetts insurer doing the same mix and volume of business in New Jersey that Prudential actually did in Massachusetts. Prudential concluded that, in the aggregate, its Massachusetts premium taxes exceeded the total of the premium taxes that New Jersey would have imposed on the hypothetical Massachusetts insurer.[3]

We set forth in the margin a table showing, in rounded figures, the difference for Prudential's 1991 tax year between the use of the aggregate method of calculating a retaliatory tax and the method that separates life insurance premiums from all other insurance premiums.[4] That table shows that Prudential's total premium tax burden in Massachusetts for 1991 was $3,465,000. The total tax burden of a hypothetical Massachusetts insurer doing the same mix and volume of business in New Jersey in 1991 would have been $2,866,000, approximately $600,000 less than the premium taxes imposed in Massachusetts. Thus, by aggregating all premium taxes for retaliatory tax purposes, Prudential would owe no retaliatory tax. If, however, insurance premium taxes are separated for the purpose of calculating retaliatory taxes, as the commissioner concluded and as the board ruled, Prudential would have to pay

---

[3]Massachusetts imposes a 2% direct tax on all insurance premiums. G. L. c. 63, §§ 20, 22, 23. In New Jersey, life insurance and individual accident and health premiums are subject to a 2.1% tax, but group health and accident premiums are taxed at only 1.05%. N.J. Stat. Ann. § 54:18A-3 (West 1996 & Supp. 1998).

[4]Prudential's 1991 tax year calculations:

|  | Massachusetts | New Jersey | |
|---|---|---|---|
| Life |  |  | |
|   Rate | 2% | 2.1% | |
| Premium Tax | $1,971,000 | $2,065,000 | $94,000 |
| Accident & Health |  |  | |
|   Rate | 2% | 1.05% | |
| Premium Tax | $1,494,000 | $ 801,000* | ($693,000) |
| Total Tax | $3,465,000 | $2,866,000 | ($599,000) |

  * This figure includes a relatively small amount of tax imposed on individual accident and health premiums, at 2.1%.

a retaliatory tax of $94,000 because the New Jersey premium tax on life insurance premiums (2.1%) is higher than the Massachusetts premium tax (2%) on life insurance premiums. Obviously, if more lines of insurance are treated separately for retaliatory tax purposes, the potential is greater that a foreign insurer will have to pay some such tax.

1. We turn now to the statutory provisions that concern premium and retaliatory taxes. Under G. L. c. 63, § 20, an insurer, domestic or foreign, must pay annually a tax of 2% on all life insurance premiums received for policies allocable to the Commonwealth.[5] Section 21 of G. L. c. 63 provides for a possible additional annual tax, a retaliatory tax, on business of a foreign life insurance company taxable under § 20. The retaliatory tax is the excess, if any, of "the amount of tax which would be imposed in the same year by the laws of the state . . . under which such company is organized, upon a life insurance company incorporated in this commonwealth, or upon its agents, if doing business to the same extent in such state," over the amount of the excise imposed under § 20. In short, for our purposes, because New Jersey has a higher premium tax on life insurance premiums than Massachusetts, Prudential is directed to pay the amount of the excess described in § 21 to Massachusetts.

For companies other than life insurance companies, there are separate statutory provisions imposing premium taxes. A domestic non-life insurance company must pay a 2% premium tax on all gross premiums (with exceptions not relevant here). G. L. c. 63, § 22. A foreign insurance company, except a foreign life insurance company as to business taxable under §§ 20 and 21 (and except for certain other companies writing lines not involved here), must pay a tax at the rate of 2% on all premiums "but not less in amount than would be imposed by the laws of the state . . . under which such company is organized upon a like insurance company incorporated in this commonwealth, or upon its agents, if doing business to the same extent in such state." G. L. c. 63, § 23. Because New Jersey has a lower rate of premium tax on group health and accident premiums than

[5]In relevant part, G. L. c. 63, § 20, states that "[e]very life insurance company . . . authorized to transact business in the commonwealth shall annually pay an excise of two per cent upon all new and renewal premiums received during the preceding calendar year for all policies allocable to this . commonwealth."

Massachusetts does, Prudential owed no retaliatory tax under § 23.

In deciding whether Massachusetts retaliatory taxes are to be calculated in the aggregate or separately, we follow "[t]he general rule of construction . . . that where the language of the statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words. *O'Sullivan* v. *Secretary of Human Servs.*, 402 Mass. 190, 194 (1988). This rule has particular force in interpreting tax statutes." *Commissioner of Revenue* v. *AMIWoodbroke, Inc.*, 418 Mass. 92, 94 (1994). See *Gillette Co.* v. *Commissioner of Revenue*, 425 Mass. 670, 674 (1997). Tax statutes are to be construed strictly, and all ambiguities are resolved in favor of the taxpayer. See *Commissioner of Revenue* v. *Dupee*, 423 Mass. 617, 622 (1996); *Commissioner of Revenue* v. *AMIWoodbroke, Inc.*, *supra*; *DiStefano* v. *Commissioner of Revenue*, 394 Mass. 315, 326 (1985), and cases cited. Where, however, no ambiguity exists, there are no doubts to be resolved in favor of the taxpayer. See *State Tax Comm'n* v. *John Hancock Mut. Life Ins. Co.*, 361 Mass. 125, 130 (1972).

Prudential relies on G. L. c. 175, § 159, appearing in a chapter of the General Laws concerning insurance, to argue that its aggregate premium taxes must be used in determining whether it owes a retaliatory tax. Section 159, which is set out in full in the margin,[6] provides, among other things, that, if a foreign State imposes a tax on a Massachusetts insurance company in addition to or in excess of the tax imposed here on foreign companies, a like tax must be imposed on companies of that foreign State doing business here. The provisions of § 159 tell us nothing about whether retaliatory premium taxes are to be considered in the aggregate or item by item.[7]

That the provisions of §§ 21 and 23 predominate over G. L.

[6] "If by the laws of any other state any taxes, fines, penalties, licenses, fees, deposits or other obligations or prohibitions, additional to or in excess of those imposed by the laws of this commonwealth upon foreign companies and their agents, are imposed on domestic companies and their agents doing business in such state, like obligations and prohibitions shall be imposed upon all companies of such state and their agents doing business in this commonwealth so long as such laws remain in force."

[7] By contrast, thirty-eight States and the District of Columbia specifically require some form of aggregation in calculating retaliatory taxes. See Ala. Code § 27-3-29 (1986 & Supp. 1997); Alaska Stat. § 21.09.270 (Lexis 1998); Ariz. Rev. Stat. Ann. § 20-230 (West 1990 & Supp. 1998); Ark. Code Ann.

c. 175, § 159, is demonstrated by our opinion in *Fireman's*

§ 23-63-102 (Michie 1994); Cal. Ins. Code § 685 (Deering 1992 & Supp. 1999); Colo. Rev. Stat. Ann. § 10-3-209 (West 1990 & Supp. 1998); Conn. Gen. Stat. § 12-211 (1997); Del. Code Ann. tit. 18, § 532 (1989); D.C. Code Ann. § 47-2610 (Michie 1997); Fla. Stat. Ann. § 624.5091 (West 1996); Ga. Code Ann. § 33-3-26 (Michie 1992); Idaho Code § 41-340 (Michie 1998); Ill. Comp. Stat. c. 215, par. 5/444 (West 1997); Iowa Code Ann. § 505.14 (West 1998); Ky. Rev. Stat. Ann. § 304-3.270 (Michie 1996); Me. Rev. Stat. Ann. tit. 24-A, § 428 (West 1990 & Supp. 1998); Md. Ins. Code Ann.§ 6-303 (Michie 1997 & Supp. 1998); Mich. Comp. Laws Ann. § 500.476a (West 1993); Minn. Stat. Ann. §§ 60A.14, 60A.19 (West 1996); Miss. Code Ann. § 27-15-123 (1991); Mo. Rev. Stat. § 375.916 (1986); Mont. Rev. Code § 33-2-709 (1997); Neb. Rev. Stat. § 44-150 (1998); Nev. Rev. Stat. § 680A.330 (1998); N.J. Stat. Ann. § 17B:23-5 (West 1996); N.M. Stat. Ann. § 59A-5-33 (Michie 1995); Okla. Stat. Ann. tit. 36, § 628 (West 1999); Or. Rev. Stat. § 731.854 (1997); Pa. Stat. Ann. tit. 40, § 50 (West 1992); S.C. Code Ann. § 38-7-90 (Law. Co-op. 1989 & Supp. 1998); S.D. Codified Laws § 58-6-70 (Michie 1996); Tenn. Code Ann. 56-4-218 (1994); Tex. Ins. Code Ann. art. 21.46 (1981 & Supp. 1999); Vt. Stat. Ann. tit. 8, § 3367 (1984 & Supp. 1998); Va. Code Ann. § 38.2-1026 (Michie 1994 & Supp. 1998); Wash. Rev. Code Ann. § 48.14.040 (West 1984 & Supp. 1999); W. Va. Code Ann. § 33-3-16 (Michie 1996); Wis. Stat. Ann. § 215.26, 601.55 (West 1994 & Supp. 1998); Wyo. Stat. Ann. § 26-3-130 (Michie 1997).

Despite the use of the term "aggregate," the aggregation methods used are not uniform. See generally National Association of Insurance Commissioners, Retaliation: A Guide to State Retaliatory Taxes, Fees, Deposits and Other Requirements (1998). Many States have carved out various exceptions to the retaliatory tax calculation or aggregate on different bases. For example, in Alaska the annual statement filing fee and the certificate of authority continuation fee are retaliated separately while other fees and taxes are aggregated. The District of Columbia does not retaliate on fees. Several States specifically exclude special purpose assessments from their retaliatory tax calculations, while some States exclude guaranty fund assessments. Florida excludes amounts paid to the Florida Hurricane Catastrophe Fund. Idaho, Minnesota, and Wisconsin aggregate taxes, but retaliate fees on a fee-by-fee basis.

Six States do not specify a method to be used in computing retaliatory taxes. See Ind. Code Ann. § 27-1-20-12 (Michie 1994); Kan. Stat. Ann. § 40-253 (1993 & Supp. 1998); La. Rev. Stat. Ann. § 22:1079 (West 1995); Ohio Rev. Code Ann. §§ 3905.41, 5729.06 (Banks-Baldwin 1994); R.I. Gen. Laws § 27-2-17 (Lexis 1998); Utah Code Ann. § 31A-3-401 (Michie 1994). New York and North Carolina retaliate using the same method as the State where the foreign insurer is domiciled. N.Y. Ins. Law § 1112 (McKinney 1985 & Supp. 1999); N.C. Gen. Stat. § 105-228.8 (1997). New Hampshire and North Dakota retaliate on an item-by-item basis. N.H. Rev. Stat. Ann. § 400-A:35 (Lexis 1998); N.D. Cent. Code § 26.1-11-06 (1995). Hawaii does not impose retaliatory taxes.

No other State has provisions in its insurance tax law similar to G. L. c. 63, §§ 20, 21, and 23.

*Fund Ins. Co.* v. *Commissioner of Corps. & Taxation,* 325 Mass.
386 (1950). There, we held that § 159 did not require the tax
commissioner to reduce the retaliatory tax levied pursuant to
G. L. c. 63, § 23, by the amount that the insurer paid to local
protective departments. We noted that the tax commissioner had
"literally and exactly obeyed the command" of the statute and
that the two statutory provisions, G. L. c. 63, § 23, and G. L.
c. 175, § 159, "should not be construed as in conflict with each
other. There is nothing in § 159 which requires or allows a
credit to be given against the excise tax otherwise required to
be assessed under § 23, even though the foreign company may
be exposed to some other charge in this Commonwealth. Sec-
tion 159 simply compels the imposition upon a foreign insur-
ance company doing business in this Commonwealth of 'obliga-
tions and prohibitions' of like kind and to the same extent as
those imposed in the State of the company's origin upon Mas-
sachusetts companies doing business there. And that is also
precisely what § 23 does as to the excise here in question.
Therefore there is no conflict between the two sections." *Id.* at
388-389. The similarity of the relevant language in § 21 and
§ 23 makes the court's holding in the *Fireman's Fund* case
concerning § 23 instructive in construction of § 21.

We commented on, and rejected, the foreign insurer's claim
"that the purpose of these so called retaliatory statutes is to
secure equality of treatment for domestic and foreign companies
and therefore that all burdens of whatever kind imposed in one
jurisdiction must be aggregated and compared with all burdens
of whatever kind imposed in the other and the total burden
equalized. . . . There is, no doubt, much to be said for the
theory of aggregation where the statutory language will permit
of its application, but we cannot apply it where the result would
be to bring two provisions of our own statutes into unnecessary
conflict and to render nugatory the plain words of one of them."
*Id.* at 389. We also concluded that there is nothing in the legisla-
tive history of the statutes involved "tending to a conclusion
different from that which is reached by construction of the
present wording of" § 23 and § 159. *Id.* We reach the same
conclusion that legislative history of § 20, § 21, § 23, and
§ 159, all of which appeared in St. 1873, c. 141, does not tend
to a conclusion different from our construction of those statutes.

Prudential relies on the definition of retaliatory taxes appear-
ing in G. L. c. 63, § 24A. Section 24A exempts from the retalia-

tory taxes of §§ 21 and 23 those foreign insurers whose home State does not impose retaliatory taxes on, or grants exemptions on a reciprocal basis to, Massachusetts insurers. Section 24A then defines retaliatory taxes "[a]s used herein," and does so, significantly Prudential argues, by reference to "an amount" and not "an amount or amounts." Section 24A says that "retaliatory taxes" are taxes imposed on a foreign insurer because an insurer from the taxing jurisdiction doing business in the home State of that foreign insurer "is taxable in an *amount* exceeding that imposed by the taxing jurisdiction" on a foreign insurer "doing business to the same extent in the taxing jurisdiction" (emphasis added). The word "amount" in § 24A is asked to carry more persuasive weight than it can bear. Any implication of aggregation sought to be found in § 24A cannot override the explicit commands of §§ 21 and 23. Indeed, § 24A refers separately to § 21 and § 23 under each of which any retaliatory tax is "an amount."

We see no basis, as a matter of statutory construction, for rejecting the separate calculations of retaliatory taxes that § 21 and § 23 expressly prescribe. Section 23 explicitly acknowledges the separate calculation of a retaliatory tax prescribed in § 21 for foreign life insurance companies and excludes from its application life insurance premiums taxable under §§ 20 and 21. The Legislature could have easily combined the treatment of life insurance premium taxes for retaliatory tax purposes with those of all non-life insurance lines of insurance.[8] Prudential can prevail only if the statutory direction for two independent calculations is unconstitutional, an issue we turn to next.

2. Prudential argues that the retaliatory premium tax provisions of G. L. c. 63, as we have construed them, deny it equal protection of the laws under the State and Federal Constitutions. Prudential states that, "[t]he general design of [retaliatory] taxes is to mirror the tax burdens of other states where those tax

[8]In 1832, Massachusetts was one of the first States to enact a retaliatory tax. St. 1832, c. 140, § 1. At that time there was no direct tax on insurance premiums in Massachusetts. Direct premium taxes on life and other insurance business evolved separately over the course of the next one hundred years. In 1943, the Legislature brought the taxation schemes for life and other insurance business in line with each other. St. 1943, c. 531, § 1. Notably, however, the Legislature chose not to combine or aggregate the statutory provisions for life and other insurance, but instead maintained separate statutes for both direct and retaliatory taxes.

burdens exceed the tax level in the retaliating state, in order to induce other states to moderate their taxation of the retaliating state's insurance companies." See *Metropolitan Life Ins. Co.* v. *Commonwealth*, 198 Mass. 466, 469 (1908). It claims that the Massachusetts retaliatory premium tax, to be constitutional, must be based on an aggregation of all premium taxes in making the relevant comparison between Massachusetts and New Jersey premium taxes.[9] We reject the argument under a standard of review that is the same under each Constitution. See *Tobin's Case*, 424 Mass. 250, 252 (1997); *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 743 (1986).

"Absent a showing that a statute burdens a suspect group or fundamental interest, it will be upheld as long as it is rationally related to the furtherance of a legitimate state interest." *Dickerson* v. *Attorney Gen., supra*. See *Western & S. Life Ins. Co.* v. *State Bd. of Equalization*, 451 U.S. 648, 668 (1981). Under this rational-basis review, the statute bears a strong presumption of validity, and the burden of proving the measure invalid rests with the party challenging it. See *Aloha Freightways, Inc.* v. *Commissioner of Revenue*, 428 Mass. 418, 423 (1998), citing *Andover Sav. Bank* v. *Commissioner of Revenue*, 387 Mass. 229, 235 (1982); *Shell Oil Co.* v. *Revere*, 383 Mass. 682, 686 (1981), and cases cited. See also *FCC* v. *Beach Communications, Inc.*, 508 U.S. 307, 314-315 (1993), and cases cited. Furthermore, it is irrelevant for constitutional analysis whether a reason now advanced in support of a statutory classification is one that actually motivated the Legislature. *FCC* v. *Beach Communications, Inc., supra* at 315.

In *Western & S. Life Ins. Co.* v. *State Bd. of Equalization, supra*, the Supreme Court considered and rejected an equal protection challenge to a California retaliatory tax. California imposed a retaliatory tax whenever the State of a foreign insurer's incorporation imposed higher taxes on California insurers than California would impose on that State's insurers doing business in California. *Id.* at 650-651 & n.1. The Court stated that "California's retaliatory insurance tax should be sustained if we

[9]The friend of the court brief (see note 2 above) asserts that the failure to aggregate all premiums for the calculation of retaliatory taxes will result in "irrational, discriminatory tax increases imposed on foreign insurance companies doing business in Massachusetts and also tax increases on Massachusetts companies doing business in other states, with the unfortunate potential of extending such increases to any insurer doing business interstate."

find that its classification is rationally related to achievement of a legitimate state purpose." *Id.* at 657. In its analysis, the Court considered whether the challenged legislation had a legitimate purpose and whether it was reasonable for lawmakers to believe that the use of the challenged classification would promote that purpose. *Id.* at 668. See *Shell Oil Co.* v. *Revere*, 383 Mass. 682, 686 (1981).

The Court noted, and cited extensive supporting authority, that "the principal purpose of retaliatory tax laws is to promote the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes." *Id.* at 668. If a retaliatory tax statute and its resulting discrimination between domestic and foreign insurers had the sole purpose of generating revenue at the expense of out-of-State insurers, the legislation would not survive an equal protection challenge. See *Western & S. Life Ins. Co.* v. *State Bd. of Equalization, supra* at 669; *United Servs. Auto. Ass'n* v. *Curiale*, 88 N.Y.2d 306, 313 (1996). Also, if the purpose of a tax is to favor domestic industry by taxing a foreign corporation at a higher rate solely because of its residence, the tax would violate equal protection rights. *Metropolitan Life Ins. Co.* v. *Ward*, 470 U.S. 869, 878, 882-883 (1985). The purpose, however, of applying pressure on other States to maintain low taxes on Massachusetts insurers, and thus promote Massachusetts insurers, is not an illegitimate one. *Western & S. Life Ins. Co.* v. *State Bd. of Equalization, supra* at 671. Nor do we see the separate treatment of life insurance premiums from other insurance premiums as an improper departure from the purpose of influencing other States' tax policies. A specific focus on life insurance premiums may exert pressure on foreign jurisdictions to lower life insurance premium taxes thereby promoting the interstate business of domestic insurers. The Massachusetts retaliatory premium tax thus has a legitimate purpose.

In the *Western & S. Life Ins. Co.* case, the Court concluded that the California Legislature rationally could have believed that the California retaliatory tax would promote its objective of inducing other States to lower the burdens on California insurers. *Id.* at 672. The Court did so while acknowledging that many people doubted the effectiveness of retaliatory taxes as a means of deterring discriminatory and excessive taxation of insurance companies by the various States. *Id.* at 671.

Prudential argues that all bases for a rational legislative belief

570                     429 Mass. 560 (1999)

The Prudential Insurance Company of America *v.* Commissioner of Revenue.

in the effectiveness of retaliatory taxes disappear when life insurance premiums are selected for treatment apart from all other lines of insurance. Such an argument is speculative. Equal protection principles impose "no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State . . . may vary the rate of excise upon various products." *Allied Stores of Ohio, Inc.* v. *Bowers*, 358 U.S. 522, 526-527 (1959). It is rational to suppose that a retaliatory tax on a foreign company that writes only life insurance would promote the statutory objective. The fact that a foreign insurer also writes another line of insurance in Massachusetts does not invalidate the initial rational supposition. To the extent that legislation does not permit aggregation, it puts pressure for equalization on every line of insurance that is treated separately and does not disadvantage insurers that do not pursue more than one line. Certainly, "the question is at least debatable," and that is enough to sustain the tax against an equal protection challenge. *Western & S. Life Ins. Co.* v. *State Bd. of Equalization, supra* at 674. See *Shell Oil Co.* v. *Revere, supra* at 688, and cases cited.

3. Prudential argues that the commissioner's failure to issue a Notice of Intention to Assess (NIA) for any deficiency in tax year 1990 precluded him from assessing any retaliatory tax for that year. The board ruled that "Prudential's mathematical errors and failure to properly calculate the retaliatory taxes in clear contravention of the instructions on the return constituted an arithmetic, clerical or other obvious error on the face of" Prudential's 1990 tax return, and accordingly the commissioner could validly assess a deficiency without first issuing a NIA.

An NIA is generally a condition precedent to making a valid assessment of taxes. G. L. c. 62C, § 26 (*b*). See *Upjohn Co.* v. *State Tax Comm'n*, 347 Mass. 281, 283 (1964). The commissioner may, however, make an assessment without first issuing a NIA "[i]n the case of an arithmetic or clerical error, or other obvious error apparent upon the face of the return." G. L. c. 62C, § 26 (*c*). Prudential's use of the aggregate method of computing retaliatory taxes, instead of the method specifically called for on the tax return, falls within the exception stated in § 26 (*c*).[10]

Prudential suggests that the term "other obvious error" refers

---

[10]Prudential made several mathematical errors on its 1990 tax return. Those errors apparently would not have resulted in any deficiency.

only to errors of the same kind or of the same general description as arithmetic or clerical errors. It points to interpretations of 26 U.S.C.A. § 6213(b) and (g)(2) (West 1989 & Supp. 1998), the Federal analogue to G. L. c. 62C, § 26 (*c*), as well as to the Code of Massachusetts Regulations to support its argument. These provisions are clearly distinguishable. The Federal statute refers only to a "mathematical or clerical error." The regulation provides illustrative examples of mathematical or clerical errors, but it specifically states that the list is "not exhaustive." See 830 Code Mass. Regs. § 62C.26.1(7) (1993).

Prudential's disregard of the calculations called for by the instructions on the tax return is an "obvious error on the face of" the return. Therefore, we reject Prudential's argument that the commissioner's failure to issue a NIA for the 1990 tax year invalidates the assessment of retaliatory taxes for 1990.

4. The decision of the Appellate Tax Board is affirmed.

*So ordered.*